[No. 8,402—In Bank.]
August 22, 1882.

## THE PEOPLE *v.* A. H. CHAPMAN.

CONSTITUTIONAL LAW—STATE PRISON DIRECTORS—COMPENSATION—MILEAGE.
  By Section 17 of the Act of April 15, 1880, "to define, regulate, and
  govern the State Prisons of California," it was provided, that the Direct-
  ors should be paid for traveling and other expenses, while engaged in the
  discharge of their duties, twenty cents per mile for the number of miles
  actually traveled; and by the same section as amended in March, 1881,
  it was provided that they should receive ten cents per mile for traveling
  expenses and one hundred dollars per month for other expenses incurred
  while engaged in the performance of official duties.

*Held:* That the provisions of this Section—whether as originally passed or as amended—were in conflict with Section 4 of Article x of the Constitution; which provides, that "the members of the Board shall receive no compensation, other than reasonable traveling and other expenses incurred while engaged in the performance of official duties, to be audited as the Legislature may direct."

ID.—ID.—ID.—ID.—The Constitution did not direct the Legislature to audit and allow the expenses of the Directors; it restricted legislative power to directing how and before what tribunal or board "audit" should be had.

ID.—CONSTRUCTION OF CONSTITUTION—PROCEEDINGS OF CONVENTION.—The proceedings of the Constitutional Convention and the address of the members of the Convention to the people of the State referred to and considered upon a question of constitutional construction.

ID.—PAYMENT OF MONEY BY THE TREASURER WITHOUT AUTHORITY OF LAW.—Money paid by the Treasurer without authority of law is recoverable by the State.

APPEAL from a judgment for the defendant in the Superior Court of the County of Sacramento.    DENSON, J.

A petition for rehearing was filed in this case after judgment and denied.

*A. L. Hart,* Attorney-General, for Appellant.

*Wm. Irvine* and *Henry Edgerton,* for Respondent.

McKEE, J.:

By Article x. of the Constitution of 1879, there was created a Board of State Prison Directors to consist of five members, who were to be appointed by the Governor of the State, by and with the advice and consent of the Senate, and to hold their offices for a term fixed by the Constitution.    To this Board the charge and superintendence of the State Prison were intrusted; and, in addition, the Legislature was expressly authorized to confer upon the members such other powers and enjoin upon them such other duties in respect to other penal and reformatory institutions of the State as might be prescribed by law.    At the same time authority was given to the Legislature to pass such laws as it might deem necessary to further define and regulate the powers and duties of the Board, Wardens and Clerks of the State Prison, and to carry into effect the provisions of the Constitution.

One of these provisions related to the subject of compensa-

tion to the Directors. By Section 4 of Article x., it was provided that "the members of the Board should receive no compensation other than reasonable traveling and other expenses incurred while engaged in the performance of official duties, to be audited as the Legislature may direct."

In 1880, the Legislature, by an Act entitled "An Act to define, regulate, and govern State Prisons of California," approved April 15, 1880, enacted as follows: "Section 17. The Directors shall receive no compensation for their services, but shall be paid for traveling and other expenses, while engaged in the discharge of their duties, twenty cents per mile for the number of miles actually traveled;" and in March, 1881, it amended the section so as to read as follows : "Section 17. The Directors shall receive no compensation other than ten cents per mile for traveling expenses, and one hundred dollars per month for other expenses incurred while engaged in the performance of official duties."

As a Director the defendant is charged to have received and appropriated for the years 1880 and 1881 the sum of more than three thousand seven hundred dollars, when, in fact, all his expenses, incurred in the performance of his official duties, did not exceed in either year the sum of two hundred dollars ; and the action in hand was brought to recover back the money which he has unlawfully received and appropriated. Reception and appropriation of the money as compensation to which he was entitled as a Director, under the statutes of 1880 and 1881, are admitted by the defendant. But it is contended that those statutes are repugnant to the provisions of the Constitution upon the subject of compensation, and were wholly ineffectual to legalize the abstraction of the money from the public treasury. Whether they are constitutional or not is, therefore, the principal question to be decided.

Unquestionably, the Constitution regulated the compensation to which the Directors of the State Prison were entitled. As regulated, they were to receive no other than "reasonable traveling and other expenses" incurred in the performance of official duties ; and as the paramount law of the State on the subject, that regulation was binding not only upon the Directors, but also upon the Legislature. Compensation be-

ing fixed by the Constitution, the Legislature, in the exercise of its law-making functions, was without power to unfix it, or to modify or change it. It had no such power, unless given to it by the express words of the Constitution, or by necessary implication. But neither expressed nor impliedly has such power been conferred; on the contrary, the law-making function of the Legislature upon the subject has been, by the express words of the Constitution, restricted to prescribing the mode of procedure for ascertaining the *amount* of the compensation.

Ascertainment by audit as "directed by the Legislature," of the expenses, as defined by the Constitution, expresses the will of the people upon the subject of compensation to the Directors; and the Legislature, within the limits of the re- strictions imposed upon it by the people in their sovereign capacity, could not change the compensation or audit it.

The Constitution did not direct the Legislature to audit and allow the expenses of the Directors; it restricted legis- lative power to directing how and before what tribunal or board "audit" should be had; but upon that subject both statutes are silent. The statute of 1880 established the sys- tem of mileage at twenty cents per mile for the constitu- tional "reasonable traveling and other expenses," and the statute of 1881 went still beyond it; it retained the system of mileage for traveling expenses, and salaried the office for "other expenses." It allowed ten cents per mile for the one, and one hundred dollars per month for the other. Mileage and months—not reasonable expenses—became the things to be audited; but *how* and before what tribunal or board? No directions have been given, no tribunal has been provided.

If either or both of the legislative systems can stand, nothing remains of the Constitutional regulation of compen- sation to the Directors. The power of the Legislature rises at once from the limitations of the Constitution to full and complete authority over the entire subject; and it may, in the exercise of its functions, allow as compensation not only ten or twenty cents per mile, and one hundred dollars per month salary, but any amount for mileage or salary; and, instead of reasonable traveling and other expenses as com- pensation for services rendered while engaged in the perform-

ance of official duties, these officers have salaries and mileage. That was not the intention of the framers of the Constitution, nor of the people who ratified it. From the debates of the Constitutional Convention, it appears that the members of the Committee on State Institutions were of one mind as to the management of State prisons by a Board of Directors; but they differed upon the number of members which were to constitute the Board, and their compensation, and the mode of selecting them. A minority were in favor of making the office elective and salaried; the majority favored the policy of appointment by the Governor and Senate, and to hold office without compensation, except payment of necessary expenses incurred while in discharge of official duties. Upon that basis the Committee reported Article x. of the Constitution, just as it was afterwards adopted by the Convention and ratified by the people; and in presenting it to the Convention, Delegate Van Dyke, acting for the Chairman of the Committee, explained the provision under consideration as follows: "It will be observed that we have provided that these Directors shall have no salaries. It was shown to the Committee, to the entire satisfaction of almost all the members, that entirely competent and worthy men can be found in the State for the purpose of reforming them (State prisons), and so conducting them as to redound to the advantage and benefit of the State—men of means, men who have retired from active business, and who have made this matter a study, who will be willing to give their services without compensation. I say it was shown to the Committee that any number of this class of men could be selected by the Governor, who would serve without any compensation whatever. In fact, the present Prison Commission is purely a voluntary association, composed of that very class of men, and they have done a great deal of good in supervising the prison management in this State. The majority of the Committee were fully satisfied that competent, honest men can be had who will perform these duties without pay, save their actual traveling expenses."

Strong opposition was made in Convention to the policy of appointment and of requiring men to serve the State without pay for their services. It was urged that whether elected or

appointed they should be paid; and that if payment was not provided, "the Directors would seek in some way to get pay, and directly or *indirectly* to secure it." (Debates of Convention, pp. 1031, 1032.) But after debate the Convention refused to make the office elective or salaried. It adopted Article x. of the Constitution just as it came from the hands of the Committee; and in the address of the members of the Convention to the people of the State, the work of the Convention in that regard was thus referred to: "It is provided for the appointment of five Prison Directors, to hold office for ten years, without compensation except necessary expenses while in the discharge of official duties.  *  *  *  It has been shown that in reference to our Insane Asylums, the management of which has generally been unexceptionable, a good class of men can be secured to fill the office of Directors without salary; and it is believed that this change will remove the management of our State Prisons from the domain of party politics."

In view of those expressions of thought and intention by the framers of the Constitution upon the subject of compensation to State Prison Directors, and of the intention of the people of the State in ratifying the Constitution, we think it is manifest that the will of the Legislature, as expressed in Section 17 of the Statutes of 1880 and 1881, is in conflict with the will of the people as expressed in Section 4 of Article x. of the Constitution. The Legislature is absolutely prohibited from any special legislation affecting compensation to officers, especially when that compensation has been fixed by the Constitution. (Const., §§ 20 and 25, Art. iv.) Section 17 of the Statutes of 1880 and 1881 is therefore unconstitutional and void.

Being void, the money received and appropriated by the defendant was withdrawn from the public treasury without authority of law. No money can be drawn from the Treasury but in consequence of appropriations made by law, and upon warrants duly drawn thereon by the Controller (Const., §§ 22 and 29, Art. iv.); where money has been drawn from the Treasury without authority of law it is recoverable back. Money thus obtained does not become the property of the receiver; and it is unconscientious for him to retain it. At all

'events the receipt of it is not a voluntary payment which precludes the people of the State from recovering it back. (*Morgan* v. *Palmer*, 2 Barn. & Cress. 729; *Clinton* v. *Strong*, 9 Johns. 369.)

Judgment reversed and cause remanded.

MORRISON, C. J., and MYRICK, THORNTON, and SHARPSTEIN, JJ., concurred.

Mr. Justice Ross, not having heard the argument, took no part in the decision.