[S. F. No. 5644. In Bank.—July 28, 1910.]

HENRY M. McDONALD, Petitioner, v. CHARLES F. CURRY, Secretary of State of the State of California, C. G. KEYES, County Clerk of Los Angeles County,. and MARTIN BEKINS, Respondents.

ELECTION—PRIMARY NOMINATION LAW—PARTY NOMINATION PETITION —SAME PETITIONERS FOR DIFFERENT CANDIDATES FOR SAME OFFICE. —Under the Primary Nomination Law of 1909, (Stats. 1909, p. 691), neither the secretary of state nor the county clerk can be restrained from placing upon the official primary ballot the name of a person as a candidate for a party nomination for office, who has filed petitions nominating him as such candidate, signed by petitioners who constituted the requisite percentage of the party's vote cast at the last presidential election, merely because certain of such petitioners, sufficient in number to reduce such percentage below the required amount, had previously signed a petition for the nomination of another person as the party's candidate for the same office.

ID.—DUTY OF COUNTY CLERK OR REGISTRAR—NOT REQUIRED TO PURGE PETITIONS OF DUPLICATE SIGNATURES.—Under that act, although "each signer of a nomination paper" is forbidden to sign another for the same office, it is no part of the duty of the county clerk or registrar to compare the signatures to the different nomination petitions for a particular office to see whether the same person has signed more than one. All he is required to do is to compare the nomination papers with the registry list, and all the discretion conferred upon him is to disregard any name appearing upon such paper or papers which is not on the great register in his office. If the papers answer this test he is required in case of a state or congressional or district or legislative office, to forward them promptly to the secretary of state with his certificate to that effect. The duty of purging the nomination papers of duplicate signatures not being imposed, it cannot be imported into the law upon the ground that the legislature must have so intended.

APPLICATION under the Primary Nomination Law, directed to the Secretary of State and to the County Clerk of Los Angeles County, requiring them to desist from placing the name of a person upon the official primary ballot as a candidate for the Democratic nomination for State Senator.

The facts are stated in the opinion of the court.

Sidney M. Van Wyck, Jr., for Petitioner.

BEATTY, C. J.—This is an application based upon the provisions of section 27 of the recently enacted Primary Nomination Law. (Stats. 1909, p. 691.) The prayer of the petition is for an order directed to the defendants Curry and Keyes requiring them and each of them to desist from placing the name of defendant Martin Bekins upon the official primary ballot as candidate for the Democratic nomination for state senator from the thirty-eighth senatorial district. The allegations of the petition show that the petitioner, McDonald, possesses all the qualifications entitling him to hold said office, and that he is a candidate for said nomination; that on July 14th he filed with defendant Keyes, as county clerk, certain petitions nominating him as such candidate, and that said Keyes on the same day certified that of the names signed to said petitions 460 were names of voters properly registered at the date of signing, and that they constituted more than the requisite three per cent of the Democratic vote cast at the last presidential election. It is further shown that said Martin Bekins is also a candidate for the same nomination, and that on July 12th he filed petitions nominating him, as such candidate; that on July 14th said Keyes certified that the number of names signed to said petitions was only 154 registered voters, but that they were more than three per cent of the Democratic vote in said district at said last election. Both of these certificates together with the nominating petitions were forwarded to and duly filed in the office of the secretary of state. It is alleged that of the 154 electors whose names are signed to the Bekins petitions ninety-six were disqualified by reason of the fact that they had previously signed for this petitioner and consequently that said Bekins had only fifty-eight qualified signers where 130 were necessary to entitle him to a place on the primary ballot. Upon these grounds the petitioner lodged with the defendant, Curry, a protest against the filing of the Bekins petitions, but his protest was disregarded and said defendant is about to issue a certificate to the effect that said Bekins has filed in his office a regular and proper nominating petition, etc. And it is alleged that the defendant Keyes threatens to, and will, unless restrained, place the name of Martin Bekins on the Democratic primary ticket as a candidate for the Democratic nomination for state senator from the thirty-eighth district, thereby involving the petitioner—the

only legitimate candidate, in a costly and unnecessary contest for a nomination.

Section 27 of said act (Stats. 1909, p. 709) reads as follows:

"Whenever it shall be made to appear by affidavit to the supreme court or district court of appeal or superior court of the proper county that an error or omission has occurred or is about to occur in the placing of any name on an official primary election ballot, that any error has been or is about to be committed in printing such ballot, or that any wrongful act has been or is about to be done by any judge or clerk of a primary election, county clerk, registrar of voters in any city and county, canvassing board or any member thereof, or other person charged with any duty concerning the primary election, or that any neglect of duty has occurred or is about to occur, such court shall order the officer or person charged with such error, wrong or neglect to forthwith correct the error, desist from the wrongful act or perform the duty, or forthwith show cause why he should not do so. Any person who shall fail to obey the order of such court shall be cited forthwith to show cause why he shall not be adjudged in contempt of court."

It will be seen that by this section a very ample concurrent jurisdiction has been conferred upon this court, the district courts of appeal, and the superior courts to correct by a summary proceeding any misconduct of the officers charged with the duty of carrying out the provisions of the law, and the first question to be considered is whether the secretary of state or the county clerk has done anything contrary to law or omitted to do anything that the law enjoins upon him as a duty, or whether he is intending or threatening to do what the law forbids. We cannot see that either of the two officers has done or neglected to do anything that the law enjoins on the one hand, or forbids on the other. Assuming the truth of all that is alleged in the petition they have simply observed the statutory requirements. It is true that "each signer of a nomination paper" is forbidden to sign another for the same office, but it is no part of the duty of the county clerk or registrar to compare the signatures to the different nomination petitions for a particular office to see whether the same person has signed more than one. All he is required to do is to compare the nomination papers

with the registry list, and all the discretion conferred upon
him is to "disregard any name appearing upon such paper
or papers which is not on the great register in his office."
If the papers answer this test he is required in case of a
state or congressional or district or legislative office, to for-
ward them promptly to the secretary of state with his cer-
tificate to that effect. (Stats. 1909, sec. 4, p. 694.) If, in-
stead of doing this, he should assume to purge a set of nom-
ination papers by throwing out those petitions signed by
electors disqualified by reason of the fact that they had first
signed for another candidate, he would be usurping a power
and neglecting a duty at the same time. No such duty being
imposed it cannot be imported into the law upon the ground
that the legislature must have so intended. And besides
there are various considerations upon which the legislature
may have omitted *ex industria* any provision for visiting upon
candidates the faults of electors. No great harm is done if
a candidate who has in good faith secured the signatures of
a sufficient number of electors to entitle him to a place on
the primary ballot should be allowed that advantage notwith-
standing the fact that enough of his signers were disqualified
by signing for other candidates to deprive him, if their peti-
tions were disregarded, of the requisite percentage of his
party vote. The principal reason for limiting, as the statute
intends to limit, the number of candidates whose names are
to be printed on the ballot is to prevent the appearance of
so many names as to make it confusing to the voters or too
unwieldy for use, and it could rarely if ever happen that
either result would be brought about by the violation on the
part of electors of the inhibition against signing more than
once for the same office. Aside from the inconvenience to
be apprehended from a contingency which, in view of the
penal consequences of a violation of the law, is so remote,
every consideration of policy and justice is in favor of having
printed on the ballot the names of all candidates who have
in good faith complied with the conditions upon which the
privilege depends. If the names of disqualified electors are
signed to an essential number of their papers they have no
means of discovering the defect until too late to remedy it.
Whatever the clerk or registrar may be able to discover by
a comparison of the several papers after they have been filed,

the candidate has no means of discovering such defects except by comparing his petition with the register of voters, and . if by that test it is sufficient it is scarcely just that he should be excluded from a place on the ballot by reason of a latent defect in his nomination papers wholly due to the misconduct, or possibly to the deliberate fraud, of the very electors whose previous petitions are to be counted for his competitor. And if it is not just to the candidate that he should pay the penalty of a fault not his own, it is equally certain that no public policy requires its infliction. With his name on the primary ballot he only competes on perfectly fair and equal terms with others who are in the same advantageous position; if he is defeated no harm is done; if he is nominated it proves that he is the candidate having the largest following in his party, and that by his nomination the purpose of the law has been accomplished, when the purpose and policy of the law might have been subverted by the omission of his name from the official ballot.

Whether upon these or other considerations the legislature may have deliberately omitted to provide any other safeguard than the penal clauses of the statute, against the minor and improbable inconvenience of having here and there an extra name printed on the ballot, or whether the omission was due to oversight, the result is the same; under the law the secretary of state and the several county clerks and registrars are invested with merely ministerial functions, and their duties in respect to the preparation of the official ballots to be used at the primary election are exactly prescribed. They are only obeying the law in placing the name of Bekins on the ballot, and they cannot be commanded to do otherwise. No harm to the public and no wrong to any individual results from this conclusion—freedom of choice on the part of the electors is enlarged instead of being curtailed and the inconvenience involved, if any, is trifling.

Petition denied.

Angellotti, J., Shaw, J., Lorigan, J., and Sloss, J., concurred.