[Civ. Nos. 9074, 9077.   Third Dist.   May 23, 1956.]

GERALD B. WALLACE, Petitioner, v. THE SUPERIOR
  COURT OF PLACER COUNTY et al., Respondents;
  JOHN G. PICHES, Real Party in Interest.
[Two Cases.]

Tindall & Tindall and Bradford, Cross, Dahl & Hefner for
Petitioner.

A. B. Broyer, District Attorney, and Franklin Tuttle, Dep-
uty District Attorney, for Respondents.

F. L. Sinclair for Real Party in Interest.

VAN DYKE, P. J.—The Legislature of 1955 created an additional judgeship in the Superior Court of Placer County and the Honorable Leland J. Propp was by the governor appointed to that office. The office is now to be filled by election. Petitioner, Gerald B. Wallace, is a candidate for election to said judgeship, and a primary election is to be held within said county on June 5th next. Petitioner filed his declaration of candidacy for said office with respondent Lillian Rechenmacher, as County Clerk of Placer County, and, save for the matter of his eligibility, petitioner has complied with all the requirements of law entitling him to have his name placed upon the primary election ballots. On April 17th one John G. Piches, as petitioner, filed in the Superior Court of Placer County a petition for a writ of mandate ordering the omission of Mr. Wallace's name from the ballot on the ground that he was not an eligible candidate because he had not been a resident of the county of Placer for two years immediately preceding said date of June 5, 1956. Section 69500 of the Government Code provides that:

"No person is eligible for election to the office of judge of the superior court unless he has (a) been a citizen of the United States and a resident of this state for five years and of the county in which he is elected for two years next preceding his election, . . ."

Mr. Wallace appeared in said proceeding and asserted that he could comply with all residence requirements including the county residence requirement. He further asserted that that portion of said section which required residence for two years within the county was unconstitutional and therefore void. He has steadily maintained this contention in every way open to him and he still here maintains the invalidity of that requirement as being in conflict with the qualifications set forth in the Constitution for the office of judge of the superior court. His objections upon constitutional grounds were overruled by the superior court and after a hearing upon the fact of residence that court determined that he could not meet the statutory county residence requirement and that he was not therefore entitled to have his name placed upon the primary ballot.

After the respondent court had filed in the cause a written memorandum of decision declaring that petitioner herein was not eligible for the office and further declaring that the challenged enactment was constitutional, and after the respondent court had ordered findings and judgment prepared in accord-

ance with the memorandum, petitioner herein filed in this court on May 10th last a petition for a writ of prohibition. Although when his petition was signed and verified the order of the respondent court had not been made, it was made and entered by the respondent court on May 9th, one day before said petition was filed herein. This is shown by the answer of respondents and it was stipulated during argument before this court that this court may, if it decides this matter on the merits, issue a final writ without further intermediate proceedings.

At the outset and before considering the constitutionality of the challenged legislation we are met with the claim that the proceeding in the respondent court was brought under the provisions of section 2900 of the Elections Code; that there is no right of appeal from that decision; further that the decision of the respondent court in that proceeding is final as of the date of its entry and that the appellate courts are without jurisdiction to review the court's action through an original writ proceeding. Reliance is placed upon *Matter of Snyder,* 158 Cal. 218 [110 P. 820], *McDonald* v. *Curry,* 158 Cal. 160 [110 P. 480], *Communist Party* v. *Peek,* 20 Cal.2d 536, 556 [127 P.2d 889], and *Donnellan* v. *Hite,* 139 Cal. App.2d 43 [293 P.2d 158]. Section 2900 of the Elections Code provides as follows:

"Whenever it is made to appear by affidavit to the Supreme Court, district courts of appeal, or superior court of the proper county that an error or omission has occurred or is about to occur in the placing of any name on, or in the printing of, an official primary election ballot, or that any wrongful act has been or is about to be done by any person charged with any duty concerning the primary election, or that any neglect of duty has occurred or is about to occur, such court shall order the officer or person charged with such error, wrong or neglect forthwith to correct the error, desist from the wrongful act or perform the duty, or show cause why he should not do so."

In *McDonald* v. *Curry, supra,* it was said of this section that by it "a very ample concurrent jurisdiction has been conferred upon this court, the district courts of appeal, and the superior courts, to correct by a summary proceeding any misconduct of the officers charged with the duty of carrying out the provisions of the law." In *Matter of Snyder, supra,* it was said that: "According to the terms of the act the juris-

diction of the superior courts in their respective ('the proper') counties is just as extensive and complete as the jurisdiction of the Supreme Court, and as there is no provision for an appeal in this class of contests their judgments are final when entered." In *Donnellan* v. *Hite, supra,* where the petition in mandate, addressed to the District Court of Appeal, asserted that the registrar of voters of Los Angeles County was preparing ballots to be used at a primary election to the office then held by petitioner when no election to that office could properly be held, the court denied its writ upon the ground that section 2900 of the Elections Code gave to petitioner a plain, speedy and adequate remedy at law. It then treated the petition in mandate as the beginning of an action in the District Court of Appeal pursuant to said code section, declaring that the remedy afforded by the code section was more speedy and adequate than would be a writ of mandate. Treating the proceedings in respondent court as having been brought under the Elections Code and not as an ordinary mandate proceeding, it would appear that petitioner here has no remedy by appeal. But nothing said in the cited opinions can be construed as declaring an intent on the part of the Legislature to prevent this court from acting under its constitutional power to issue writs of mandate, prohibition and certiorari. The act itself does not expressly so declare. Rather, the absence of appeal creates one of the conditions under which original writs will issue. We hold, therefore, that it is competent for this court to treat the pleadings of petitioner herein as a petition in certiorari to review the jurisdiction of respondent court to order petitioner's name to be omitted from the primary election ballots.

It is conceded that petitioner herein is in all things qualified to be a candidate for the office of superior court judge save only that he does not and cannot meet the requirements of section 69500 of the Elections Code which requires of such a candidate that he shall have resided in the county two years next preceding his election. We have concluded that it was and is beyond the power of the Legislature to add this qualification in view of the fact that the Constitution has established the exclusive qualifications that can be required for the office of superior court judge. The Constitution of 1879 originally created the office of superior court judge. It was not theretofore known to the law. *Nisi prius* courts as established by the Constitution of 1849 were district courts and other inferior courts and many of the district courts

included more than one county. For the office of district judge the Constitution of 1849 set up no qualifications. In 1863 the Legislature required that district judges should be citizens of the United States and residents of the state for two years prior to election or appointment, but these statutory qualifications obviously did not carry over and attach to the constitutional office of judge of the superior court created by the Constitution of 1879. That Constitution, however, did state what should be the qualifications of that office. Section 23 of article VI provided that: ''No person shall be eligible to the office . . . of a judge of a superior court, unless he shall have been admitted to practice before the Supreme Court of the State.'' At that time admission to practice before the Supreme Court required three months' residence in the state prior to admission. Insofar as judges of the superior court were concerned, the constitutional statement of qualifications remained as originally enacted until 1924 when the section was amended to provide that no one should be eligible to the office of judge of a superior court unless he should have been admitted to practice before the Supreme Court for a period of at least five years immediately preceding his election or appointment. Qualifications for admission to practice before the Supreme Court have varied materially from time to time, but always they have included residence in the state. They have also included various requirements touching training in the law and the possession of good moral character. It is thus to be observed that the Constitution, while always requiring admission to practice before the Supreme Court, has by implication included within its scope such qualifications as from time to time such admission would require, and has declared no other qualifications.

In 34 American Law Reports, 2d, page 155, and following, there appears an exhaustive annotation upon the subject of the authority of Legislatures to impose qualifications for the holding of constitutional offices. It is commonly held that state constitutions are to be considered as limitations of power and unless the legislative act is prohibited expressly or impliedly by the constitution it must be held valid. It sometimes is said that before a court will declare an act unconstitutional it must be such beyond a reasonable doubt. The difficulty arises when the constitution, in creating a constitutional office, has stated qualifications therefor but has not expressly declared that the stated qualifications are exclusive. As noted, our Constitution has, since its first enactment, contained con-

stitutional statements as to the qualifications required of superior court judges. Concerning such a situation the law generally may be stated to be as follows:

". . . [W]here the constitution prescribes the qualifications for state office, the legislature can neither add to, nor detract from, the qualifications so prescribed. Persons selected by the people for a state office and eligible according to the constitution have a constitutional right to such office." (81 C.J.S., § 67, p. 998.)

3 McQuillin on Municipal Corporations, third edition, section 12.58, page 234, says:

"If, however, the constitution prescribes the qualifications of an officer it is, of course, beyond the power of the legislature to prescribe additional qualifications. It is self-evident that a statute cannot change the qualifications fixed by the constitution, . . ."

In an annotation in 47 American Law Reports, page 481, it is stated:

"With but one exception, the courts have recognized the general rule that when a state Constitution names the qualification for a constitutional office, the legislature has no authority to prescribe additional qualifications, or to remove any of the requirements provided for in the Constitution, unless that instrument, expressly or by implication, gives the legislature such power."

In *Imbrie* v. *Marsh*, 37 N.J. 578 [71 A.2d 352, 356, 18 A.L.R.2d 241], an opinion by Mr. Chief Justice Vanderbilt stated the matter as follows:

" 'It would seem but fair reasoning upon the plainest principles of interpretation, that when the Constitution established certain qualifications as necessary for office, it meant to exclude all others as prerequisites. From the very nature of such a provision the affirmation of these qualifications would seem to imply a negative of all others. . . . A power to add new qualifications is certainly equivalent to the power to vary them.' 1 Story, Commentaries on the Constitution, section 625.

" 'The legislature cannot add to the constitutional qualifications of an officer.' 1 Cooley on Constitutional Limitations, 140."

In *Kivett* v. *Mason*, 185 Tenn. 558 [206 S.W.2d 789, 791], the above statements of the rules of construction in respect to the matter at hand were sustained. There a judge was disbarred from practice of law. Thereafter the Legislature

enacted a law requiring as a qualification to hold judicial office that a judge be a practicing attorney. On the issue as to whether the disbarred judge could continue to hold office the court said:

". . .We think, however, that the Constitution on its face furnishes affirmative evidence that its authors deliberately refrained from inserting a provision which would require that only lawyers be selected as judges of the Courts for which article 6 of the Constitution provides. Nowhere in article 6 or elsewhere in the Constitution, insofar as we have been able to find, is there any reference to lawyers in connection with who shall be the judges of our Courts. [We have noted that a like situation obtains under our Constitution of 1849.] . . .

. . . . . . . . . . . . . .

". . . This constitutional right given the voters of Claiborne County to elect whoever they please within the constitutional age and residential requirements cannot be thus abridged by the legislature. The rule applicable here is that approved by this Court quoting from Cooley's Constitutional Limitations thus:—'Another rule of construction is, that when the constitution defines the circumstances under which a right may be exercised . . . the specification is an implied prohibition against legislative interference to add to the condition.' . . ."

Many of the rules of construction in a situation where the Constitution has prescribed qualifications for a constitutional office are contained in *State* v. *Welch,* 198 Ore. 670 [259 P.2d 112]. In that case the state Constitution fixed the qualifications for the office of county surveyor as follows: "No person shall be elected or appointed to a county office who shall not be an elector of the county; . . ." The state Legislature had added a requirement that the county surveyor must be registered under the laws of Oregon as a registered professional engineer or a registered professional land surveyor. The court held that the statute conflicted with the Constitution and was, therefore, void.

When construing constitutional provisions the proceedings of the constitutional convention may be referred to and considered. (*People* v. *Chapman,* 61 Cal. 262; *Matter of Smith,* 152 Cal. 566 [93 P. 191]; *Story* v. *Richardson,* 186 Cal. 162 [198 P. 1057, 18 A.L.R. 750]; *Fox-Woodsum Lbr. Co.* v. *Bank of America,* 7 Cal.2d 14 [59 P.2d 1019].) In the following we refer to "Debates and Proceedings of the Constitutional Convention of the State of California, E. B. Willis and P. K. Stockton, Official Stenographers." The work is in

three volumes and is the report of the proceedings of the convention. The Committee of the Convention on Judiciary numbered among its members many well-known lawyers of the time, including two who had been members of the Supreme Court. The convention likewise numbered among its members many men standing at the forefront of the legal profession of their time. It appears on page 78 and following of the proceedings that there was introduced a proposed judicial system with suggested amendments of the one then existing, to be incorporated in the new Constitution as the judicial system of the state. It was proposed to divide the state into convenient judicial districts as had been done under the old Constitution in each of which one or more district judges should be elected. Where, however, the Constitution of 1849 had been silent on the matter of qualifications, it was proposed to fix in the new Constitution the following qualifications in the following language for the office of district judge:

"Sec. 18. No person shall be eligible to the office of District Judge unless he be learned in the law and has attained the age of thirty-five years; and who has not, for five years next preceding his election, been a resident of the district, and a citizen of the United States and of this State."

Similar qualifications were proposed for the continued office of county or probate judge, the stated age requirement being 30 years instead of 35. The proposal was referred to the committee. It is thus apparent that from the first the convention was considering fixing requirements for judicial offices and of course this was done by men who were well aware that this in itself was a departure from the existing Constitution. The reference to superior courts and the proposed change from district courts first appears on page 249; and again, and as to these new offices then being considered, there was (page 393) a proposal that the qualifications should be stated as follows:

"No one shall be eligible to the office of Justice of the Supreme Court unless he be at least thirty-five years of age, and shall have been admitted to practice before the Supreme Court of the State; *and no one shall be eligible to the office of Judge of a Superior Court unless he be at least thirty years of age, and shall have been admitted to practice before the Supreme Court of the State.*" (Emphasis added.)

The matter of qualifications for judicial office was the sub-

ject of extensive and at times almost vitriolic debate. The following appears on page 1002:

"Mr. Shurtleff. Mr. Chairman: I have a substitute for section twenty-four.

"The Secretary read:

" 'No one shall be eligible to the office of Justice of the Supreme Court, or of the office of Judge of a Superior Court, unless he shall have been admitted to practice in the Supreme Court.' [Note this would have eliminated age qualifications.]

"Mr. Shurtleff. . . . I see nothing in the history of this State that requires that there should be a limitation upon the age of those who are to be eligible to that office. One of the members of the Judiciary Committee, who I am sorry to see is absent now, held the office of Chief Justice when he was only twenty-nine years of age—at least of Justice, and he was made Chief Justice when thirty-one. Another distinguished jurist of this State, long since passed away, Hugh Murray, was called to the Supreme bench at the early age of twenty-seven, and officiated as Chief Justice at twenty-nine. . . . I think, therefore, it is unwise to make this limitation. Nobody claims that young men have been put in to the detriment of public interest. We hear no complaint, and I think it would be unwise to make this restriction. . . .

"Mr. White. Mr. Chairman: I wish to say a word in favor of the young men. This is not the first, it is the third attempt to strike at the young men. There is no instance in the State where young men have been elected to office and failed in the discharge of their duties on account of their age, and I am opposed to putting any barrier in their path of advancement."

After discussion the amendment was adopted. It excluded any age requirements in the constitutional statement of qualifications for judicial office. In volume 3 of the proceedings the following appears under date of February 12, 1879: "Report of the Committee of the Whole on the article on the Judiciary." (P. 1350.) The secretary read: "Sec. 24. No one shall be eligible to the office of Justice of the Supreme Court, or to the office of Judge of a Superior Court, unless he shall have been admitted to practice before the Supreme Court of the State." An amendment was offered by Mr. McCoy to strike out the words: "or to the office of Judge of a Superior Court." Debate followed. "Mr. McCoy. The reason I offer this is that in some counties they have no lawyers eligible to the office under this provision. Mr. Hager. . . . [B]efore a man should be allowed to occupy the position,

he should have devoted himself to the profession and have risen, as other men have, to the proper point. Suppose you allow any citizen in the county to become a judge. Why, it would not be whether he is the best qualified for the place, but rather, whether he is the most skillful politician." "Mr. Schell. . . . I hope this motion will be voted down. The gentleman says, if the people want to elect an incompetent man, that is their look out, and we have nothing to do with it. I say not. It is a matter in which every citizen of this State is interested. He is paid out of the State treasury, in part, and every citizen in this State has a right to go into that Court and have his claim settled. . . . It is an outrage upon decency to strike out this qualification." The motion to strike was lost. The record of the proceedings shows that on February 25th there was offered an amendment to the proposed section 23 of article VI of the Constitution to amend the proposed qualification of admission to practice before the Supreme Court to admission to practice before "a Court of Record." Mr. Tinnin spoke as follows: "Mr. President: It has been ascertained since this article was passed to its present stage that there are many counties in this state that have no lawyer who is licensed to practice in the Supreme Court, and under this present system it would really be impossible in these counties to carry out the scheme as it now stands. As a matter of justice to the people in the several counties in this state, that are situated far from the capital, this amendment should be adopted. It will not in any way injure the interests of the state. These lawyers will be fully as competent to discharge the duties of the position as those who have license to practice in the Supreme Court." Mr. Belcher addressed the convention: "Mr. President: It may be that in several counties there are lawyers who have never been admitted to practice before the Supreme Court and have practiced before the District Courts; but as it has been said in this Convention before if you are seeking somebody to perform special duties and special business, you seek somebody who is qualified to perform such duties. . . . You may say that there are lawyers who are fit to be admitted and who are not so. I say if there are such, let them come and get admitted to the Supreme Court. Why not? If there be in Siskiyou, or Trinity, somebody who wants to be elected Judge of a Superior Court, and who has not been admitted to practice before the Supreme Court, why not let him come if he is competent? No lawyer should be on the bench when

he is not fit to appear before the Court to which his case may go. . . ." The discussion ranged wide and included the challenge to the requirement that eligibility even on the Supreme Court should require admission to practice. In the end the qualifications heretofore stated were adopted.

These debates show that the matter of qualification to hold judicial office, and particularly with regard to the newly-created office of superior court judge, were the subject of much consideration by the convention; that though after the proposed creation of the superior court had been before the convention there was no debate expressly upon the matter of a residential requirement, nevertheless, before that stage had been reached, and while the convention was considering the old classification of district courts, a proposal to provide a residential requirement for those courts never contained in the Constitution of 1849 was presented. The record of the proceedings does not disclose specifically what happened to this residential requirement. But no such qualification appears after the system of superior courts was hit upon. In view of a residential requirement having once been proposed, it is only fair to assume that the omission of such a requirement in the final draft was not accidental, but purposeful. We see it was recognized that in some of the counties there would be few lawyers admitted to practice before the Supreme Court who would be eligible to be judges and in some counties it was suggested that there would be no person so qualified. Indeed, that is the situation which is closely approached, if not attained, in some of the counties today.

The challenged legislation, while purporting to impose a residence qualification as a prerequisite to election, does not so limit gubernatorial appointments to fill vacancies and often the governors of the state have appointed members of the bar to the office of superior court judges to fill such vacancies though the appointees had never resided in the counties to which they were thus called.

It is our view that the Constitution having originally stated the qualifications for the office of judge of the superior court and having from time to time either reenacted these qualifications without material change or changed them to require, as presently, a term of practice in addition to admission to the bar, it has at all times so fixed those qualifications as to render it beyond the power of the Legislature to add or detract therefrom and that, therefore, the challenged legis-

lation is unconstitutional. The situation presented then upon this record is this: Purporting to act under Elections Code, section 2900, Mr. Piches asserted to the Superior Court of Placer County that the respondent county clerk was wrongfully intending to place upon the primary ballot the name of petitioner here; that this wrong consisted in the alleged fact that he had not resided in Placer County during the two years preceding the date of the primary election. It is our view this petition wholly failed to state any cause for proceeding under said section 2900 and that the act of the superior court in ordering that, for the asserted reason, the name of petitioner must be omitted from the primary ballots was an act in excess of jurisdiction reviewable herein.

For the reasons given, the order of the superior court must be and it is hereby annulled.

Peek, J., and Schottky, J., concurred.