[No. C007726. Third Dist. June 25, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
BURCH MICHAEL BOWEN, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rules 976(b) and 976.1, the Introduction, part I and the Disposition are certified for publication.

## COUNSEL

Fern M. Laethem, State Public Defender, under appointment by the Court of Appeal, Jeff Gale, Chief Deputy State Public Defender, and Howard J. Specter, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, W. Scott Thorpe and Janet Neeley Kvarme, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## CARR, J.—

### INTRODUCTION

Convicted of second degree murder with a finding that he personally used a firearm (Pen. Code, §§ 187, 12022.5), defendant was sentenced to 17 years to life in state prison.

On appeal, defendant asserts he was illegally tried by a superior court judge who did not live in the county in which he sat, in violation of Government Code section 69502. In addition, he challenges the admission into evidence of an autopsy photograph and contends the prosecutor committed prejudicial error by commenting on his failure to testify.

FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISCUSSION

I

Following defendant's conviction but prior to sentencing defendant moved in propria persona for an arrest of judgment and a new trial on the ground the proceedings were void because the trial judge did not live in Yuba County. A declaration by defendant appended to the motion states "That during August of this year, I discovered by reading the Appeal-Democrat that the judge who tried my case had admitted by a letter written to the Yuba County Board of Supervisors that he was not and is not now a resident of the County of Yuba. By a subsequent editorial, I discovered that a judge's residency is a requirement for a valid trial."

The People opposed the motion on the ground the statute was unconstitutional, as it purports to add a qualification for office not contained in the California Constitution. The People also urged the " 'de facto officer' doctrine" applied, which precludes defendant from raising the issue by collateral attack.

An attorney was appointed to represent defendant and the matter was heard by a judge assigned from Sutter County. At the hearing the People did not contest the factual assertion that the judge did not live in Yuba County and no evidence contradicting defendant's declaration of such nonresidence was taken. The motion was denied.

Government Code section 69502 provides "Each judge of a superior court shall reside within the county of the court for which he is elected or appointed." (Stats. 1953, ch. 206, § 1, p. 1251.)

On appeal the People again urge the statute is unconstitutional. (Cf. 73 Ops.Cal.Atty.Gen. 191, 206, fn. 3 (1990), citing 35 Ops.Cal.Atty.Gen. 198,

*See footnote 1, *ante,* page 783.

201 (1960); Bowden & Feldman, *Take It or Leave It: Uncertain Regulatory Taking Standards and Remedies Threaten California's Open Space Planning,* 15 U.C. Davis L.Rev. 371, 397, fn. 129.) In the People's view, the statute conflicts with article VI, section 15 of the California Constitution, which provides in relevant part: "A person is ineligible to be a judge of a court of record unless for 5 years immediately preceding selection to a municipal court or 10 years immediately preceding selection to other courts, the person has been a member of the State Bar or served as a judge of a court of record in this State." Although the Constitution grants the Legislature the power to "prescribe the number of judges and provide for the officers and employees of each superior court" (Cal. Const., art. VI, § 4), it does not expressly grant the Legislature the power to add qualifications not otherwise required by the Constitution.

Two types of residency requirements for officeholders have been from time to time set forth in the California Constitution and statutes. The eligibility requirements deal with prescribed qualifications for public office and provide a person must have been a resident of a particular area to be eligible for election or appointment to the office in question.

In *Wallace* v. *Superior Court* (1956) 141 Cal.App.2d 771 [298 P.2d 69], this court considered and found unconstitutional Government Code section 69500, formerly Code of Civil Procedure section 157, which required persons to have been electors of the county for two years prior to standing for election to a superior court position. As codified in Government Code section 69500, this section provided: "No person is eligible for election to the office of judge of the superior court unless he has (a) been a citizen of the United States and a resident of this State for five years and of the county in which he is elected for two years next preceding his election, (b) been admitted to practice before the Supreme Court of this State for a period of at least five years immediately preceding his election of appointment to such office, and (c) had not less than five years' actual practice of law in this State." (Stats. 1953, ch. 206, § 1, p. 1251.)

In *Wallace,* a candidate for election to a superior court seat filed a declaration of candidacy with the Placer County Clerk, but the superior court issued a writ of mandate ordering the candidate's name be omitted from the ballot because he had not been a resident of Placer County for two years, as required by former Government Code section 69500. (*Wallace* v. *Superior Court, supra,* 141 Cal.App.2d at p. 772.) This court ruled:

The Constitution of 1849 established district courts, but there were no constitutional qualifications for that office. (141 Cal.App.2d at pp. 774-775.) In 1863 the Legislature prescribed qualifications, including residency

requirements, for district judges. (*Id.* at p. 775; see Stats. 1863, ch. 260, § 19, p. 335.) "[T]hese statutory qualifications obviously did not carry over and attach to the constitutional office of judge of the superior court created by the Constitution of 1879. That Constitution, however, did state what should be the qualifications of that office." (141 Cal.App.2d at p. 775.) Article VI, section 23 of the "new" 1879 Constitution provided that: "No person shall be eligible to the office . . . of a judge of a superior court, unless he shall have been admitted to practice before the Supreme Court of the State." By stating qualifications for superior court judges, the Constitution excluded other qualifications. (141 Cal.App.2d at pp. 775-777.) Further, the record of the proceedings of the constitutional convention show that the matter of qualifications for superior court judges was discussed at length during the debates preceding the 1879 Constitution. (*Id.* at pp. 777-781.) A residency qualification was considered, but not adopted, so "it is only fair to assume that the omission of such a requirement in the final draft was not accidental, but purposeful." (*Id.* at p. 781.)

The *Wallace* court noted a very practical reason for not imposing residency as an eligibility requirement for election or appointment to the superior court. "The challenged legislation, while purporting to impose a residence qualification as a prerequisite to election, does not so limit gubernatorial appointments to fill vacancies and often the governors of the state have appointed members of the bar to the office of superior court judges to fill such vacancies though the appointees had never resided in the counties to which they were thus called." (141 Cal.App.2d at p. 781.)

In *People* v. *Chessman* (1959) 52 Cal.2d 467 [341 P.2d 679], our Supreme Court considered the validity of a tenure-residency requirement. Government Code section 1060 required state officers, including the justices of the Supreme Court, to "reside at and keep their offices in the City of Sacramento" (Gov. Code, § 1060; see former Pol. Code, § 852). The *Chessman* court held the Legislature could not require Supreme Court justices to reside in Sacramento during their tenure. Former article VI, section 23 of the California Constitution, as noted above in relation to superior court judges, set out the qualifications for Supreme Court justices. Though *Chessman* cited *Wallace*, the court appeared to treat the question before it as distinct: While the Legislature could not add any *eligibility* requirements, it could add *tenure* requirements provided they bore a reasonable relation to the duties of the office: "When a candidate for justice meets the requirement of section 23 of article VI and . . . qualifies by taking the oath . . . the Legislature cannot properly require, by way of additional qualification, anything (such as a change of residence) which has no reasonable relation to the performance of his duties." (*Chessman, supra,* 52 Cal.2d at p. 500.) The Attorney General

has previously so interpreted *Chessman* (Cal. Atty. Gen., Indexed Letter, No. IL 76-137 (July 21, 1976) p. 5) but characterizes it as dicta.

Following the constitutional revision of 1966 and the adoption of current California Constitution article VI, section 15, the Legislature repealed the statute at issue in *Wallace* (Stats. 1967, ch. 17, § 87, p. 845), and later deleted the residency provision at issue in *Chessman* (Stats. 1984, ch. 898, § 1, p. 3013), but it did not repeal and has not to this date repealed the statute at issue herein.[3]

■ The essential issue tendered is whether Judge Buckley's acts in the conduct of defendant's trial were void for lack of jurisdiction as Judge Buckley failed to comply with the tenure-residencey requirements of Government Code section 69502 at the time of such trial. Ancillary to this question, of course, is whether the Legislature is empowered to add tenure-residency requirements that superior court judges must reside in the counties in which their courts are located and in which they must stand for reelection.

Initially, we observe that statutory tenure-residency requirements have been in effect for superior court judges since the superior courts were established by the Constitution of 1879. (Former art. VI, § 1, Cal. Const. of 1879.) In the first such statute the Legislature made provision for the situation presented herein: "Each Judge of a Superior Court shall reside at the county seat . . . or within three miles thereof, and within the county, except that in the Counties of Yuba and Sutter the Judge may reside in either of said counties." (Former Code Civ. Proc., § 158, Stats. 1880, Amend. to the Codes, ch. 35, § 1, p. 40.) The exception was created because one judgeship served both counties. (Former Code Civ. Proc., § 65, Stats. 1880, Amend. to the Codes, ch. 35, § 1, p. 26.) The exception was changed to provide that if there was more than one judge in Yuba and Sutter Counties, "it shall not be necessary for more than one Judge to reside at the county seat, as provided herein" (Stats. 1891, ch. 193, § 1, p. 277), and was deleted in 1931 (Stats. 1931, ch. 755, § 1, p. 1589). Aside from this limited exception there has always been a requirement that superior court judges reside in their counties during their tenure.

This ancillary issue raises questions concerning the nature of the statute, i.e., mandatory or directory, whether there really was a "reasonableness" standard employed in *Chessman*, and the historical matrix in which the

---

[3] We have found no repeal of Government Code section 69502. We note, however, that acknowledged legal scholar B.F. Witkin states both were repealed. (See 2 Witkin, Cal. Procedure (3d ed. 1985) Courts, § 5, p. 17 ["the attempt to add to those constitutionally specified qualifications was declared unconstitutional [citations], and the statutes were repealed in 1967"].)

"reasonableness" standard could be applied to review this statute. In addition to the constitutional question raised by the People, the statute could also be subjected to a challenge on other grounds, e.g., the "right" to travel (7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 191, p. 257).

However, as a rule of appellate review constitutional questions are to be avoided when a case may be decided on other grounds. (*Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 65 [195 P.2d 1].) This is such a case. It is unnecessary to the disposition of the jurisdictional issue that the constitutionality of the statute in question be determined.

Defendant cannot prevail on this issue even if we reached the constitutional question and found in his favor. Since 1866 our courts have held the proper method of challenging the right of a judge to *hold office* is by a quo warranto proceeding. In *People* v. *Sassovich* (1866) 29 Cal. 480, a murder case in which the death penalty was imposed, on appeal the defendant challenged his trial proceedings as void because the court in which he was tried was unconstitutionally created by the Legislature and the Governor lacked the constitutional power to appoint the judge who presided over defendant's trial and conviction. After finding the court was constitutionally created, the court rejected the second contention, holding: "The person who filled the office of Judge at the time this case was tried was appointed and commissioned by the Governor under and in pursuance of the provisions of the Act in question. He entered therefore under color of right and title to the office, and became Judge *de facto* if not *de jure*, and his title to the office cannot be questioned in this collateral mode. [Citations.] His title can only be questioned in an action brought directly for that purpose . . . ." A contrary doctrine, for obvious reasons, would lead to most pernicious results." (29 Cal. at p. 485.)[4] As between defendant and the People in this proceeding, the issue is collateral.

Defendant urges the issue is not collateral "but was a direct challenge to the proceedings prior to the entry of judgment." It is true his attack was not undertaken following a final judgment and is not "collateral" in that sense, but it is nonetheless an issue wholly removed from the question of his guilt or innocence or the fairness of the trial. Under the "de facto" officer doctrine

---

[4]The authority for the quo warranto action is found in Code of Civil Procedure section 803 which provides in pertinent part: "An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, . . . And the attorney-general must bring the action, whenever he has reason to believe that any such office or franchise has been usurped, intruded into, or unlawfully held or exercised by any person, or when he is directed to do so by the governor." (Stats. 1907, ch. 324, § 1, p. 600; see Stats. 1851, ch. 5, § 310, p. 100.)

the attack on the judge's qualifications is deemed collateral and must be raised separately. (*Ensher, Alexander & Barsoom, Inc.* v. *Ensher* (1965) 238 Cal.App.2d 250, 256-257 [47 Cal.Rptr. 688].) The rule of *Sassovich* has been applied consistently by the courts of this state and its application here is proper. (*Matter of Danford* (1910) 157 Cal. 425, 431 [108 P. 322] [judge alleged to be an alien]; *Elliott* v. *Van Delinder* (1926) 77 Cal.App. 716, 719 [247 P. 523] [justice of the peace allegedly holding executive office].) In a cattle-rustling case, the trial began in Yuba County before a Yuba County judge, but a Sutter County judge stepped in at midtrial. (*People* v. *Mellon* (1871) 40 Cal. 648.) The court held since the judge acted under color of authority, "his authority cannot be inquired into collaterally. (See *People* v. *Sassovich*, 29 Cal. 485, and cases there cited.)" (40 Cal at pp. 655-656.)

*In re Development Plan for Bunker Hill* (1964) 61 Cal.2d 21, 41-42 [37 Cal.Rptr. 74, 389 P.2d 538] dealt with the official acts of a member of the Community Redevelopment Agency of the City of Los Angeles appointed by the mayor and approved by the city council. A qualification for the office was that the member be a "resident elector" of the City of Los Angeles. An objector to official actions taken by the agency asserted the member was in fact a resident elector of Beverly Hills, not Los Angeles, his presence was necessary for a quorum and the actions so taken by the agency were invalid. The court sustained the trial court's findings that the member's status as " 'elector' cannot be thus collaterally attacked in this proceeding and, in any event, he was a de facto member of the agency and thus the requisite quorum was present and voted on the matters in issue" observing "[t]he de facto doctrine in sustaining official acts is well established. Present a de jure office, 'Persons claiming to be public officers while in possession of an office, ostensibly exercising their functions lawfully and with the acquiescence of the public, are *de facto* officers . . . . The lawful acts of an officer *de facto*, so far as the rights of third persons are concerned, are, if done within the scope and by the apparent authority of office, as valid and binding as if he were the officer legally elected and qualified for the office . . . .' " (61 Cal.2d at p. 42.)

Defendant relies on *In re Heather P.* (1988) 203 Cal.App.3d 1214 [250 Cal.Rptr. 468]. Defendant's reliance is misplaced. In *In re Heather P.*, the Fifth District held the lack of a written stipulation permitting a temporary judge to act (Cal. Rules of Court, rule 244) rendered the proceedings void. "[A]ny orders or rulings by the temporary judge would necessarily be void as the temporary judge would have been without constitutional or statutory authority to act." (203 Cal.App.3d at p. 1225.) The only authority cited was the same court's earlier opinion, *In re Damian V.* (1988) 197 Cal.App.3d 933 [243 Cal.Rptr. 185], which had reached a similar conclusion. These Fifth District cases have been criticized by other courts considering the question

there presented. (*In re Lamonica H.* (1990) 220 Cal.App.3d 634, 639-645 [270 Cal.Rptr. 60] [Fourth Dist., Div. One]. See also *In re Richard S.* (1990) 229 Cal.App.3d 1341, 1348 [270 Cal.Rptr. 411] review granted Aug. 23, 1990 (S016631) [Sixth Dist., appearing to limit cases to their facts].) Further, nowhere in the cases is the "de facto" officer doctrine considered, since a temporary judge is not a judge at all, absent a valid stipulation by the parties. (Cal. Const., art. VI, § 21.) In contrast, when a person holds himself or herself out as the holder of a de jure judgeship (see 2 Witkin, Cal. Procedure, *op. cit. supra*, Courts, § 45, p. 60), he or she acts under color of authority and any ouster attempt must come by way of quo warranto proceedings. (*Mellon, supra*, 40 Cal. at pp. 655-656.)

Finally, to clarify a point of confusion injected by defendant, we note that in response to the People's comment that superior court judges commonly sit in other counties, defendant asserts this is so "only because Government Code section 69502 is being disregarded." Defendant is mistaken. The Constitution authorizes the Chief Justice to assign judges to sit anywhere in the state (Cal. Const., art. VI, § 6; 2 Witkin, *op. cit. supra*, Courts, §§ 332, 334, pp. 347-349) and we take judicial notice that the Chief Justice regularly makes such assignments to alleviate court congestion in metropolitan areas.

II-IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The trial court is directed to modify the abstract of judgment to correctly indicate defendant's presentence credits. As modified, the judgment is affirmed.

Davis, J., concurred. Blease, Acting P. J., concurred in the result.

Appellant's petition for review by the Supreme Court was denied September 5, 1991.

---

*See footnote 1, *ante*, page 783.