**RELATIVE VALUE STUDIES, INC., a Colorado corporation, Plaintiff–Appellant,**

v.

**McGRAW–HILL COMPANIES, a New York corporation, Defendant–Appellee.**

No. 97CA2165.

Colorado Court of Appeals, Div. II.

May 27, 1999.

Lohf, Shaiman & Jacobs, P.C., John C. Steele, Gina B. Masterson, Denver, Colorado, for Plaintiff–Appellant.

Holland & Hart, LLP, Joseph W. Halpern, Lynn B. Dolven, Stephen G. Masciocchi, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge PLANK.

Plaintiff, Relative Value Studies, Inc., a Colorado corporation, appeals a summary judgment entered in favor of defendant, McGraw–Hill Companies, a New York Cor-·poration. We affirm.

During the 1980's, plaintiff entered into several contracts with defendant, and with defendant's wholly-owned subsidiary, SysteMetrics, Inc., for publication of several editions of plaintiff's medical administration books and associated electronic databases. In 1991, after the subsidiary had assigned the publication rights back to defendant, plaintiff and defendant entered into another written contract for the publication of the fourth edition of one of the books. By a later written stipulation, it was agreed that the 1991 contract also included the previous editions of the book and database. The parties entered into a similar contract in 1995 for the publication of a new edition of a related book and its associated electronic database.

In 1996, defendant sold to another publishing company all of its rights, title, and interest in the books and databases, and in the contracts relating thereto, for approximately $1 million. After the sale, the buyer continued to pay royalties to plaintiff pursuant to the contracts.

Plaintiff subsequently claimed that, pursuant to the contracts with defendant, it was entitled to a royalty percentage of the purchase price defendant received from the sale. Defendant refused to pay the claimed royalty, and plaintiff brought this lawsuit.

In the trial court, both parties moved for summary judgment, each asserting the only issue to be the interpretation and legal effect of their written contract. The trial court found that the language of the contract was unambiguous and that there were no genuine issues of material fact, agreed with defendant's interpretation of the contracts, and granted summary judgment in its favor. Plaintiff appeals that judgment.

Subsequent to entry of the summary judgment and the filing of the notice of appeal in this court, plaintiff discovered that the trial judge had, prior to entering the summary judgment here at issue, moved to a new residence outside of the judicial district in which he was appointed in violation of Colo. Const. art. VI, § 11. Plaintiff therefore also asserts on appeal that the summary judgment order is void for lack of subject matter jurisdiction in the trial court.

I.

As an initial matter, we address, and reject, plaintiff's assertion that the trial court lacked jurisdiction to grant summary judgment because the judge no longer lived in the judicial district at the time the judgment was entered.

■ Plaintiff initially asks that we take judicial notice of the judge's non-residence based on a newspaper article and the general publicity attending the matter. While we decline to do so, we will assume for purposes of analysis that it could be proved that the judge did not reside within the judicial district at the time of the summary judgment order here at issue.

In the only Colorado appellate case construing Colo. Const. art. VI, § 11, the supreme court declined to remove a judge from office despite the fact that his principal residence was outside the district in which he was elected and was acting as judge. Although conceding that the constitutional residence requirement was mandatory, the supreme court there concluded, in a *quo warranto* action, that absent some "substantial misconduct upon his part," the judge should not be removed from office. *People v. Owers*, 29 Colo. 535, 550, 69 P. 515, 519 (1902).

■ While that case does not directly answer the question before us, it logically dictates the result: a properly appointed judge, despite even a conceded violation of the constitutional residency requirement, does not lose his or her authority to act as judge merely because of the violation.

The California Court of Appeal, in reaching the same result in a case directly on

point, has held that a judge acting in violation of a similar residency requirement but otherwise properly appointed is at least a *de facto* judge and that his authority may not be collaterally attacked by a defendant seeking to overturn his criminal conviction. *People v. Bowen*, 231 Cal.App.3d 783, 283 Cal.Rptr. 35 (1991). The *"de facto* official" doctrine has been similarly applied in Colorado to validate the judgments rendered by a person elected as a county judge under the authority of a statute later held unconstitutional. *See Butler v. Phillips*, 38 Colo. 378, 88 P. 480 (1906); *Star Loan Co. v. Duffy*, 43 Colo. 441, 96 P. 184 (1908).

Plaintiff argues, however, that the holding in *Merchants Mortgage & Trust Corp. v. Jenkins*, 659 P.2d 690 (Colo.1983), requires a different result. In that case, a district judge was appointed to this court and was sworn in after hearing arguments but deferring his ruling. Months later, he entered judgment against one of the parties and that party appealed, arguing that the judgment was void. The supreme court agreed, holding that: "[A]bsent constitutional or statutory authorization, a *former district court judge* does not have authority to act in a judicial capacity, and orders entered by such a person after he ceases to be a district court judge are void." *Merchants Mortgage & Trust Corp. v. Jenkins, supra*, 659 P.2d at 692 (emphasis added); *see also Olmstead v. District Court*, 157 Colo. 326, 403 P.2d 442 (1965) (order entered after expiration of judge's term of office is void). The court ruled that, upon being sworn in as a judge of this court, he of necessity became a "former district court judge" because he was precluded from holding office as a judge of this court while continuing to hold office as a district court judge. *See* Colo. Const. art. VI, § 18.

Here, as already discussed, the trial judge was not a "former district court judge." Until and unless he was removed from his office for violation of the residency requirement or otherwise, he was still a properly appointed judge of the district court and, thus, was at least a *de facto* judge.

We therefore conclude that the trial judge did not lack jurisdiction to decide this case, and the summary judgment at issue is not void.

## II.

Plaintiff next contends that summary judgment in favor of defendant was error because there is a genuine issue of material fact. We disagree.

Summary judgment is a drastic remedy and should be granted only upon a clear showing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988). Because it presents a question of law, we review a summary judgment *de novo. Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo.1995).

The determination of whether contractual language is ambiguous and, if not, the construction of unambiguous contractual language are questions of law which we also review *de novo.* Accordingly, we are not bound by the trial court's construction of unambiguous contractual language, nor by its finding that a contract is unambiguous. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909 (Colo.1996).

A contract is ambiguous only if it is fairly susceptible to more than one interpretation. *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371 (Colo.1990).

The 1991 publication contract states, as pertinent here:

b. [Defendant] shall pay [plaintiff] a percent of the *Publisher's net receipts from the annual revenues* of . . . the Works . . . based upon the following Sliding Scale Royalty Percentages:

| Royalty Percentage | Annual Revenues |
|---|---|
| (a) 15% of | 0 – $475,000 |
| (b) 18% of | $475,001 – $950,000 |
| (c) 21% of | $950,001 and above |

c. No royalty or other payment shall be due for (i) supplementary materials or demonstration disks distributed with but not sold or licensed separately; and (ii) any copies of the Manuscript or Database or a derivative work or selections from it furnished by [defendant] to others without

payment for the purpose of publicity or for any other purpose deemed appropriate by [defendant].

d. The term *'Publisher's net receipts from the annual revenues' shall mean [defendant's] selling or licensing price, less discounts, credits, and returns, or a reasonable reserve for returns.*

e. Within ninety (90) days after June 30 and December 31 each year, [defendant] shall render a statement of the *resulting revenues for the Works distributed* and the amount payable to [plaintiff] under this Agreement .... (emphasis added)

The contracts contain an integration clause and also prohibit plaintiff from assigning its interest in or obligations under the contract without defendant's consent, except that it allows plaintiff freely to assign its royalties. No explicit mention is made of assignment by defendant, although the contract authorizes defendant to grant the rights therein conveyed to it, in whole or in part, to third parties.

The 1995 contract is, as relevant here, identical except that the percentage royalties to be paid are lower and the annual revenue ranges are different.

Plaintiff and defendant both assert that this language is clear and unambiguous and supports its position.

Plaintiff urges that "selling or licensing price," which is not defined in the contract, should be read broadly so as to encompass any income received by defendant from sales or licenses related to the contracts and the works at issue. Defendant argues that "selling or licensing price" clearly means only the revenues from the sales or licensing of the works and not from the assignment, sale, or licensing of the contracts, noting that the phrase appears in context with the language "less discounts, credits, and returns, or a reasonable reserve for returns."

We agree with the trial court and the parties that the contract is unambiguous, and we must therefore enforce it as written. *See USI Properties East, Inc. v. Simpson,* 938 P.2d 168 (Colo.1997). Furthermore, after review of the unambiguous language of the contract, in particular the language quoted above, we conclude that the trial court did not err in its construction of the contract.

The contract unambiguously states that defendant must provide plaintiff with semiannual statements of the revenues resulting from copies of the works distributed, that defendant may grant its rights in the works to third parties, that defendant shall publish the works on various conditions and sell or license them at a price it deems appropriate, and that the "selling or licensing price" is to be net of returns, credits, and discounts. Thus, we agree with the trial court that the phrase "Publisher's net receipts from the annual revenues" does not include revenues received by defendant for assigning the entire contract to another publisher.

Accordingly, the summary judgment is affirmed.

Judge CRISWELL and Judge CASEBOLT concur.