ENERGY TRANSPORTATION
SYSTEMS, INC., Appellee,

v.

KANSAS CITY SOUTHERN RAILWAY
CO., and Fort Smith and Van Buren
Railway Company, a corporation, Appellants.

ENERGY TRANSPORTATION
SYSTEMS, INC., Appellee,

v.

KANSAS CITY SOUTHERN RAILWAY
COMPANY, a corporation, Appellant.

Nos. 52680, 52681.

Supreme Court of Oklahoma.

Dec. 22, 1981.

Looney, Nichols, Johnson & Hayes by Kenneth Coe and Burton J. Johnson, Oklahoma City, for appellants.

Stipe, Gossett, Stipe & Harper, McAlester, Rhodes, Hieronymus, Holloway & Wilson by John H. Tucker and L. J. Fulton, Tulsa, for appellee.

LAVENDER, Justice:

This is an action for declaratory judgment determining the right of the owner of a right-of-way easement in lands lying beneath a railroad right-of-way to cross under the railroad right-of-way in constructing and maintaining a coal slurry pipeline within the confines of the right-of-way beneath the railroad right-of-way, and to quiet title in said coal slurry pipeline right-of-way as against the railroad.

Kansas City Southern Railway Company filed two appeals, being Nos. 52,680 and 52,-681 in which Fort Smith and Van Buren Railway Company was joined in case No. 52,680. Because of the similarity in the facts and because the issues in each case are identical, our holdings in cause 52,680 apply equally to and are determinative of cause 52,681.

Appellants, Kansas City Southern Railway Company and Fort Smith and Van Buren Railway Company, defendants below, will be referred to as Railroad, and Appellee, plaintiff below, will be referred to as ETSI.

ETSI contemplates the building of a 1,036 mile subsurfaced coal slurry pipeline from Wyoming into Oklahoma. Railroad's predecessor acquired a railway right-of-way across specified portions of Oklahoma lands pursuant to Acts of Congress of February 27, 1893 (27 Stat. 487) and April 26, 1906 (34 Stat. 137). The land in question lies in LeFlore County, Oklahoma and was a part of the Choctaw Nation in Indian Territory prior to statehood.

ETSI's slurry pipeline right-of-way laterally intersects Railroad's right-of-way though the rights therein granted lie below the railroad right-of-way, and were acquired by ETSI through slurry pipeline right-of-way grants from the successors in interest of what was the fee at the time Railroad exercised its right to its railroad right-of-way from the Choctaw Nation by reason of the foregoing Acts of Congress.

Other than qualifying to do business in the State of Oklahoma and the acquisition of its rights-of-way, ETSI has taken no further steps required by law to enable it to go forward with its contemplated plans to construct the coal slurry pipeline.

The issue which ETSI seeks to have determined by declaratory judgment is confined to the single question of whether the rights acquired by it under its slurry pipeline easements give it the right to construct a coal slurry pipeline across, but under, the easement held by the Railroad in the lands for railroad purposes.

The facts of the case are undisputed. The court below granted a motion for summary judgment in favor of ETSI confirming its right to construct and maintain a coal slurry pipeline within its easements to the extent that ETSI's right, title and interest does not interfere with the construction, maintenance and operation of the railroad of Appellant. It is from this ruling that Railroad appeals.

■ Railroad first contends that sole and exclusive jurisdiction is vested in the Oklahoma Corporation Commission, and therefore the district court was without jurisdiction to hear and determine the cause. In support, Railroad cites 27 O.S.1977, § 7.1, et seq.,[1] and the Oklahoma Constitution, Art. 9, § 18,[2] § 34.[3]

District courts are courts of unlimited original jurisdiction, clothed with power and jurisdiction to determine title to real property.[4] On the other hand, the Oklahoma Corporation Commission is a tribunal of limited jurisdiction.[5] It has executive, judicial, and legislative powers, but such powers are limited to those expressly or by necessary implication conferred upon it by the constitution and statutes.[6]

Having qualified to do business in this state as a foreign corporation, and having acquired its rights-of-way by purchase as a corporation, ETSI occupies the same status as any other qualified entity to try title to its rights-of-way as against any adverse claimant. The word "proposing" as used in 27 O.S.1977, § 7.1 contemplates something more than a subjective contemplation, and a mere inchoate intent to qualify under the laws of Oklahoma to operate a coal slurry pipeline without having done anything more in furtherance of its plans does not require it to obtain a license from the Oklahoma Corporation Commission to operate as a pipeline as a prerequisite to bringing an action to try title to its rights-of-way. And not having committed any act as a pipeline, or to qualify as a pipeline, or transportation company within the meaning of 27 O.S. 1977, § 7.8, or the Oklahoma Constitution, Art. 9, § 18, or § 34, it has not yet subjected itself to the jurisdictional control of the Oklahoma Corporation Commission.

By the clear language of 27 O.S.1977, § 7.3, only the acquisition of rights-of-way through eminent domain invoke the requirements therein set forth.

In short, since nothing in the Oklahoma Constitution or statutes confers exclusive jurisdiction upon the Oklahoma Corporation Commission to determine or control ETSI's

1. 27 O.S.1977, § 7.1 in pertinent part provides: "Any pipeline company proposing to transport coal by pipeline in or through this state must first be licensed to operate by the Oklahoma Corporation Commission and no such license shall be granted until the Commission has, after a public hearing, determined a public need and necessity and a showing of economic feasibility for the proposed pipeline....."

27 O.S.1977, § 7.3 provides: "Before any pipeline company shall acquire any right-of-way through an exercise of the right of eminent domain hereunder, it shall file in the office of the Corporation Commission a proper and explicit authorized acceptance of the provisions of this Act and the Constitution of this State, and a plat showing the route along which its pipeline is proposed to be constructed within this State and the intended size and capacity thereof."

27 O.S.1977, § 7.8 provides: "Every pipeline authorized hereunder shall be a common carrier and subject to all laws and regulations relating thereto."

2. The Oklahoma Constitution, Art. 9, § 18 in pertinent part provides: "The Commission (Oklahoma Corporation Commission) shall have the power and authority and be charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies; ...."

3. The Oklahoma Constitution, Art. 9, § 34 provides, in part: "As used in this Article (pertaining to the rights and duties of the Oklahoma Corporation Commission), the term 'transportation company' shall include any company, corporation, trustee, receiver or any other person owning, leasing or operating for hire a railroad, street railway, canal, steamboat line, and also any freight car company, car corporation, or company, trustee or persons in any way engaged in such business as a common carrier over a route acquired in whole or in part under the right of eminent domain, or under any grant from the Government of the United States; ...."

4. Oklahoma Constitution, Art. 7, § 7.

5. *Burmah Oil & Gas Co. v. Corporation Commission*, Okl., 541 P.2d 834 (1975).

6. Oklahoma Constitution, Art. 9, § 18; *Application of Spartan Airlines*, 199 Okl. 305, 185 P.2d 925 (1947); *Application of Central Airlines*, 199 Okl. 300, 185 P.2d 919 (1947); *Southwestern Light & Power Co. v. Elk City*, 188 Okl. 540, 111 P.2d 820 (1941).

action to try title to its rights-of-way, jurisdiction to do so lay within the district court.[7]

Railroad next asserts that the district court erred in granting ETSI's motion for summary judgment under Rule 13 of the Rules for District Courts of Oklahoma because there are unresolved issues of fact which are necessary to the rendition of judgment, to-wit: the location of the exact route of the coal slurry pipeline, the diameter and size of the pipeline, the number of coal slurry pipelines, "and other relevant details of the construction of said pipeline." We hold, however, such matters were wholly extraneous to the issues which were before the court below for determination. ETSI sought only to determine whether its rights-of-way acquired by purchase entitled it to construct and maintain a coal slurry pipeline thereon so long as it did not interfere with Railroad's use of its right-of-way for railroad purposes and to quiet title in its rights-of-way as against any adverse claim thereto by Railroad. So long as ETSI's pipeline will lie within its rights-of-way and so long as the pipeline does not interfere with Railroad's use of its railroad right-of-way, the unresolved issues suggested by Railroad are irrelevant as is the matter of possible future damages which might be sustained by Railroad in the event that ETSI violates the order and judgment rendered by the district court. Summary judgment should be granted where the facts set forth in detail show no substantial controversy as to any material fact.[8]

Next, Railroad asserts that the court below erred in holding that this action is maintainable under the Oklahoma Declaratory Judgments Act, 12 O.S.1971, § 1651, et seq., as amended by Laws 1974, c. 134, § 1, because the actual construction and operation by ETSI of its slurry pipeline under Railroad's right-of-way might result in future damages to Railroad which cannot be determined in the present action, citing § 1651 of the Oklahoma Declaratory Judgments Act in support of its contention.[9]

■ A declaratory judgment action may be properly brought to determine the right to an easement, and to adjudicate title to the same.[10]

■ That portion of § 1651 of the Oklahoma Declaratory Judgments Act which states "a court *may* refuse to make such determination where the judgment, if rendered, would not terminate the controversy, or some part thereof, giving rise to the proceeding" (emphasis added) is generally held to be discretionary;[11] however, it is a matter of judicial discretion, and its exercise is subject to appellate review.[12]  In the

---

7.  *Southern Union Production Company v. Corporation Commission*, Okl., 465 P.2d 454, 458 (1970).

8.  *First Nat. Bank & Trust Co. of Oklahoma City v. Nesbitt*, Okl., 598 P.2d 1197 (1979).

9.  Section 1651 provides:
    "District courts may, in cases of actual controversy, determine rights, status, or other legal relations, including but not limited to a determination of the construction or validity of any foreign judgment or decree, deed, contract, trust, or other instrument or agreement or of any statute, municipal ordinance, or other governmental regulation, whether or not other relief is or could be claimed, except that no such declaration shall be made concerning liability or nonliability for damages on account of alleged tortious injuries to persons or to property either before or after judgment or for compensation alleged to be due under workmen's compensation laws for injuries to persons or concerning liability or

indemnity against liability for such injuries. The determination may be made either before or after there has been a breach of any legal duty or obligation, and it may be either affirmative or negative in form and effect; *provided however, that a court may refuse to make such determination where the judgment, if rendered, would not terminate the controversy, or some part thereof, giving rise to the proceeding.*" (Emphasis added.)

10.  22 Am.Jur.2d Declaratory Judgments, §§ 57, 70.

11.  *Sullenger's Admr. v. Sullenger's Admrx.*, 287 Ky. 238, 152 S.W.2d 570; *Tanner v. McKeldin*, 202 Md. 569, 97 A.2d 449; *Proprietary Assoc. v. Board of Pharmacy*, 16 N.J. 62, 106 A.2d 272; *Milwaukee v. Milwaukee County*, 256 Wis. 580, 42 N.W.2d 276.

12.  *Gray v. Defa*, 103 Utah 339, 135 P.2d 251, 155 A.L.R. 495 (1943).

case before us, the determination by declaratory judgment of whether ETSI owns a valid coal slurry pipeline easement which permits it to install and maintain a pipeline under the Railroad's right-of-way settles all of the controversies now existing between ETSI and the Railroad. And while it may not settle controversies which might in the future arise between the parties pertaining to damages to Railroad in the event that ETSI violates the rights confirmed in it by the declaratory judgment decree, it cannot but be of practical help in resolving the same as and if they arise. We therefore hold that the Uniform Declaratory Judgments Act is a proper and appropriate proceeding by which the controversy between the parties to this cause may be resolved.[13]

■ The final question for consideration is whether ETSI has sufficient property ownership by virtue of its rights-of-way to construct a coal slurry pipeline within its easements and across, but below, Railroad's right-of-way.

As we have heretofore pointed out, Railroad's right-of-way emanates from Acts of Congress of February 27, 1893 (27 Stat. 487) entitled, An act to grant to the Chicago, Rock Island and Pacific Railway Company a right of way through the Indian Territory, and for other purposes, and of April 26, 1906 (34 Stat. 137) entitled, An Act To provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory, and for other purposes. Sec. 2 of the Act of 1893 provides, in part after granting a right-of-way through Indian Territory: "Provided, That no part of the lands herein granted shall be used except in such manner and for such purpose only as shall be necessary for the construction and convenient operation of said railroad, telegraph, and telephone line, and when any portion thereof shall cease to be used such portion shall revert to the nation or tribe of Indians from which the same shall have been taken."

In construing both Acts of Congress, the United States Court of Appeals, Tenth Circuit, in the case of *Kansas City Southern Ry. Co. v. Arkansas Louisiana Gas Company*[14] held that the right-of-way acquired thereunder by a railroad is in the nature of an easement in which the dominant estate is owned by the railroad and the servient estate by the abutting landowners. The Court further held (pp. 834, 835):

"Of course, a railroad company which acquires a right of way over and through lands of another acquires more than the mere right of passage over such lands. It acquires the right to excavate drainage ditches; to construct beneath the surface supports for bridges and other structures; to erect and maintain telegraph lines and supporting poles with part of the poles beneath the surface; to construct passenger and freight depots, using portions of the land below them for foundations; to construct signals; to make fills and cuts to decrease the grades of their rail lines, and to use material from the land covered by the right of way to make such fills; and to construct a roadbed and lay its ties and rails thereon. Hence, it has substantial surface and subsurface rights, which it is entitled to have protected. But in our opinion it cannot deprive the owner of the servient estate or those claiming through such owner from making use of the land in strata below the surface and below substrata which are used or needed by the railroad company, and which in nowise, as in the instant cases, interferes with the construction, maintenance and operation of the railroad."

The holding in *Kansas City Southern Railway Company* is in accord with most cases dealing with the nature and extent of railroad rights-of-way acquired by railroad companies through Acts of Congress in the Western portion of the United States,[15] and applies equally to the case at bar.

**13.** 22 Am.Jur.2d, Declaratory Judgments, § 13; Oklahoma's Declaratory Judgment Act, George B. Fraser, 32 Okl.B.J. 1447 (1961).

**14.** 476 F.2d 829 (1973).

**15.** See *Sand Springs Home v. State ex rel. Dept. of Highways*, Okl., 536 P.2d 1280 (1975) and the cases therein cited; *Energy Transp. Systems, Inc. v. Union Pacific Railroad Co.*, 435 F.Supp. 313 (1977).

We therefore hold that the court below correctly granted a motion for summary judgment in favor of ETSI confirming its right to construct and maintain a coal slurry pipeline within its easements to the extent that ETSI's right, title and interest does not interfere with the construction, maintenance and operation of the railroad of Appellant.

The judgment of the court below is affirmed.

IRWIN, C. J., BARNES, V. C. J., and HODGES, SIMMS and OPALA, JJ., concur.

HARGRAVE, J., concurs in part and dissents in part.