SINCLAIR MARKETING INC., a Wyoming corporation; Sinclair Oil Corporation, a Wyoming corporation; Sinclair Transportation Company, a Wyoming corporation; Burch Family Partnership, LLP, a Colorado limited liability partnership; Murray Family Farms, LLP, a Colorado limited liability partnership; Blue Dog Leasing, LLC, a Colorado limited liability company; Thomas H. Wielde; Log Jammer, LLC, a Colorado limited liability company; Hunt Brothers Properties, Inc., a Colorado limited liability company; K–W Enterprises, a Colorado general partnership; 9985E104, LLC, a Colorado limited liability company; Continental World Leasing Real Estate, LLC, a Colorado limited liability company; T1 Ellis Enterprises, LLC, a Colorado limited liability company; Marilinn Sonneman; Arthur Crocfer; Mary Jane Crocfer; Bruce J. Crocfer; Eugene A. Kapaun; and Mary Kapaun, Plaintiffs–Appellants and Cross–Appellees,

v.

The CITY OF COMMERCE CITY, Colorado, a home-rule Colorado municipal corporation; and The City Council for the City of Commerce City, Colorado, Defendants–Appellees and Cross–Appellants.

No. 08CA2633.

Colorado Court of Appeals, Div. IV.

Dec. 10, 2009.

As Modified on Denial of Rehearing Jan. 21, 2010.

Faegre & Benson, LLP, John R. Sperber, Jacy T. Rock, Denver, Colorado, for Plaintiffs–Appellants and Cross–Appellees Sinclair Marketing Inc.; Sinclair Oil Corporation; and Sinclair Transportation Company Zakhem Atherton, LLC, John S. Zakhem, Matthew J. Cassady, Denver, Colorado, for Plaintiffs–Appellants and Cross–Appellees Burch Family Partnership, LLP; Murray Family Farms, LLP; Blue Dog Leasing, LLC; Thomas H. Wielde; Log Jammer, LLC; Hunt Brothers Properties, Inc; K–W Enterprises; 9985E104, LLC; Continental World Leasing Real Estate, LLC; T1 Ellis Enterprises, LLC; Marilinn Sonneman; Arthur Crocfer; Mary Jane Crocfer; Bruce J. Crocfer; Eugene A. Kapaun; and Mary Kapaun.

Berg Hill Greenleaf & Ruscitti, LLP, Thomas E. Merrigan, Melanie B. Lewis, Heidi C. Potter, Boulder, Colorado, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge WEBB.

This unilateral land annexation case primarily presents the question whether a statutory exception to municipal annexation power concerning "public rights-of-way" includes railroad rights-of-way. The Burch plaintiffs and the Sinclair plaintiffs appeal the trial court's judgment in favor of defendants, the City of Commerce City and the City Council (collectively the City), upholding two annexations of plaintiffs' property. The City cross-appeals the court's refusal to award attorney fees. We conclude that railroad rights-of-way are not public rights-of-way, affirm the denial of attorney fees, vacate as to a different exception, and remand for further proceedings on that exception.

## I. The Municipal Annexation Act

Under the Municipal Annexation Act (the Act), sections 31–12–101 to –123, C.R.S.2009, a municipality may, through adoption of an ordinance, unilaterally annex "any unincorporated area ... entirely contained within the boundaries of a municipality," known as an enclave, that "has been so surrounded for a period of not less than three years." § 31–12–106(1). This power is limited by the following exceptions:

- If "[a]ny part of the municipal boundary or territory surrounding such enclave consists at the time of the annexation ... of public rights-of-way, including streets and alleys, that are not immediately adjacent to the municipality on the side of the right-of-way opposite to the enclave." § 31–12–106(1.1)(a)(I); or

- If "[a]ny part of the territory surrounding the enclave was annexed to the municipality ... without compliance with section 30 of article II of the state constitution." § 31–12–106(1.1)(a)(II).

Article II, section 30(1)(b), provides that no unincorporated area may be annexed unless the municipality

has received a petition for the annexation of such area signed by persons comprising more than fifty percent of the landowners in the area and owning more than fifty percent of the area, excluding public streets, and alleys and any land owned by the annexing municipality.

Landowners petitioning for annexation must meet the requirement that "not less than one-sixth of the perimeter of the area proposed to be annexed is contiguous with the annexing municipality." §§ 31–12–104(1)(a), 31–12–107(1)(a).

If a reviewing court "finds" that one of these exceptions applies, "it shall declare the annexation of the enclave to be void." § 31–12–116(2)(b).

## II. Facts

The City approved two ordinances, AN–219–07 and AN–220–07, unilaterally annexing property referred to as the Southern Enclave (including property owned by the Burch

plaintiffs) and the Northern Enclave (including property owned by the Sinclair plaintiffs), respectively. Both enclaves had been entirely surrounded by the boundaries of the municipality for more than three years. Those boundaries included railroad rights-of-way that had been previously annexed to the City, but were not immediately adjacent to the municipality on the opposite side of the enclave. These facts were undisputed.

Additionally, the eastern boundary of the Southern Enclave was formed by land that the City had annexed in 1985 (AN–57–85). Whether AN–57–85 satisfied the one-sixth contiguity requirement was disputed.

After the City rejected plaintiffs' challenges to the annexations, both groups of plaintiffs filed separate actions seeking to have the annexations declared void because a railroad right-of-way is a public right-of-way, thus triggering the exception in section 31–12–106(1.1). The Burch plaintiffs also argued that the annexation of the Southern Enclave should be declared void because AN–57–85 did not comply with the one-sixth contiguity requirement.

The district court consolidated the cases and upheld the annexations based on the record before the City, but without construing "public right-of-way." The plaintiffs then filed separate notices of appeal, which were consolidated.

### III. Standard of Review

■ Judicial review of annexation is a special statutory proceeding to determine whether the governing body that approved the annexation exceeded its jurisdiction or abused its discretion. § 31–12–116(3), C.R.S. 2009; *see Board of County Comm'rs v. City of Aurora,* 62 P.3d 1049, 1052 (Colo.App. 2002).

■ A district court's review of an annexation "is based solely on the record that was before the city, and … must be affirmed unless there is no competent evidence in the record to support it." *Board of County Comm'rs v. City of Greenwood Village,* 30 P.3d 846, 848 (Colo.App.2001). Factual findings by a city council "are sufficient when based on evidence not specifically controverted by other evidence in the record." *TCD North, Inc. v. City Council,* 713 P.2d 1320, 1322 (Colo.App.1985).

■ Because we are in the same position as the district court, we review annexations de novo. *Board of County Comm'rs v. City of Aurora,* 62 P.3d at 1052. That review "is generally limited to determining whether the Act's procedural mandates have been met, and [we] may not pass upon the wisdom of the annexation itself." *Id.* However, because a governing body "has no authority to define terms employed by the General Assembly in state statutes," interpretation of terms in the Act remains a question of law for the courts. *Id.; accord Minch v. Town of Mead,* 957 P.2d 1054, 1056 (Colo.App. 1998).

### IV. Public Rights–of–Way

■ Addressing a question of first impression under section 31–12–106(1.1), we conclude that railroad rights-of-way do not constitute public rights-of-way. Therefore, we reject plaintiffs' first contention that the annexations are void because a portion of the City boundaries surrounding the enclaves are railroad rights-of-way.

Initially, we disagree with the City that we must affirm "since there was competent evidence in the record that the railroad rights-of-way here were undoubtedly private." Under this approach, whether a railroad right-of-way triggered the public rights-of-way exception would be determined on a case-by-case basis. But numerous Colorado statutes treat "railroad rights-of-way" as a commonly understood term. *See, e.g.,* § 43–1–1302(2), C.R.S.2009 ("Railroad right-of-way" is defined as "any real property or interest in real property that is or has been owned by a railroad company as the site, or is adjacent to the site, of an existing or former rail line, including fixtures such as railroad tracks, that may be used or are usable to continue rail service"). No Colorado case defines this term based on idiosyncratic facts presented, which would erode predictability. *Cf. DISH Network Corp. v. Altomari,* 224 P.3d 362, ―― (Colo.App. 2009) (division interpreted statutory term "management personnel" de

novo rather than deferring to trial court's fact-specific inquiry). Thus, we treat the question as a matter of statutory interpretation, subject to our de novo review.

Neither section 31–12–106 nor any other provision of the Act defines "public rights-of-way." The parties cite no Colorado case, nor have we found one, either defining "public rights-of-way" or holding that it has a commonly accepted meaning. Thus, the intended scope of "public rights-of-way" is ambiguous. *People v. Madden*, 111 P.3d 452, 457 (Colo.2005).

■ When a statutory term is undefined, "we must determine the legislature's intent without explicit guidance." *Fogg v. Macaluso*, 892 P.2d 271, 274 (Colo.1995). To construe such statutes:

> [T]erms should be construed in harmony with one another so as to give full effect to the legislative intent in enacting the statute. Therefore, consideration of an undefined term in context may provide guidance as to legislative intent and the term's proper meaning.

*Id.* (citations omitted). Hence, we first look to the textual context as well as the legislative history. *People v. Madden*, 111 P.3d at 457.

Other sections of the Act use the phrase "right-of way" with various modifiers, including "transportation." Under section 31–12–104, the one-sixth contiguity requirement "shall not be affected by the existence of a platted street or alley, a public or private right-of-way, [or] a public or private transportation right-of-way or area ... between the annexing municipality and the land proposed to be annexed." § 31–12 –104(1)(a); *see also* § 31–12–105(1)(e) ("platted street or alley, a public or private right-of-way, a public or private transportation right-of-way or area ..."); § 31–12–115(6)(a) (annexing an area that contains any portion of a "public transportation right-of-way").

■ Had the General Assembly intended to include transportation rights-of-way in section 31–12–106(1.1), it could have done so with specific language. "[W]hen the legislature includes a provision in one statute, but omits that provision from another similar statute, the omission is evidence of its intent." *Deutsch v. Kalcevic*, 140 P.3d 340, 342 (Colo.App.2006). Thus, the General Assembly's use of the specific term *"transportation right-of-way"* in other sections of the Act and its omission from section 31–12–106(1.1) are presumed to have been intentional. *Adams v. Corrections Corp.*, 187 P.3d 1190, 1194 (Colo.App.2008); *see also Zamarripa v. Q & T Food Stores, Inc.*, 929 P.2d 1332, 1339 (Colo.1997) (omission of a modifier used in another section "must be viewed as intentional and given effect").

Moreover, the legislative history of section 31–12–106(1.1) is silent on whether railroad rights-of-way are considered public rights-of-way. *See* Hearings on H.B. 1533 before the H. Local Government Comm. (March 25, 1981). Based on contemporaneous newspaper articles discussing the City's efforts to annex railroad rights-of-way in the context of other allegedly abusive annexation practices, plaintiffs argue that "the Legislature was likely aware of the City's use of railroads when it adopted the phrase 'rights-of-way' in section 106(1.1)(a)(I) [sic]." Even assuming that these articles are properly before us [1], they do not establish facts subject to judicial notice. *Cf. Relative Value Studies, Inc. v. McGraw–Hill Cos.*, 981 P.2d 687, 688 (Colo. App.1999) (declining to take "judicial notice of the judge's non-residence based on a newspaper article and the general publicity attending the matter").

> CRE 201(b) provides:
> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

---

**1.** Before the district court, plaintiffs attached the articles to their reply brief. The City received permission to file a surreply, in which it urged the court not to consider the articles. The district court noted the dispute but did not resolve it. *See Vanderbeek v. Vernon Corp.*, 25 P.3d 1242, 1248 (Colo.App.2000) (declining to consider issues raised for the first time in reply brief), *aff'd*, 50 P.3d 866 (Colo.2002).

These articles fail to show that the City's motives in seeking to annex railroad rights-of-way "are not subject to reasonable dispute." Hence, unlike in *In re Senate Bill No. 95*, 146 Colo. 233, 238, 361 P.2d 350, 353 (1961), cited by plaintiffs, the circumstances surrounding those attempted annexations are not matters "known to every member of the legislature and to every other interested person."

Plaintiffs' reliance on language in article XV, section 4 of the Colorado Constitution that "[a]ll railroads shall be public highways" as a reason to treat railroad rights-of-way as public rights-of-way is misplaced. No Colorado appellate case has applied this provision in a context that offers guidance for interpreting "public rights-of-way." The following cases indicate that it should not be read as equating railroad rights-of-way with public rights-of-way.

In *Donovan v. Pennsylvania Co.*, 199 U.S. 279, 294, 26 S.Ct. 91, 50 L.Ed. 192 (1905), the Supreme Court acknowledged that railroads are considered "public highways," but then explained:

> Although its functions are public in their nature, the [Railroad] company holds the legal title to the property which it has undertaken to employ in the discharge of those [public] functions. And, as incident to ownership, it may use the property for the purposes of making a profit for itself.... It is not bound to so use its property that others, having no business with it, may make profit to themselves. Its property is to be deemed, in every legal sense, private property as between it and those of the general public who have no occasion to use it for purposes of transportation.

Similarly, in *Western Union Telegraph Co. v. Pennsylvania Railroad Co.*, 195 U.S. 540, 570, 25 S.Ct. 133, 49 L.Ed. 312 (1904), the Supreme Court noted references to railroads as "public highways," but explained:

A railroad's right of way has, therefore, the substantiality of the fee, and it is private property, even to the public, in all else but an interest and benefit in its uses. It cannot be invaded without guilt of trespass. It cannot be appropriated in whole or part except upon the payment of compensation. In other words, it is entitled to the protection of the Constitution, and in the precise manner in which protection is given.

■ In adopting section 31–12–106(1.1), the General Assembly was presumed to be "cognizant of judicial precedent relating to the subject matter under inquiry." *State Engineer v. Castle Meadows, Inc.*, 856 P.2d 496, 504 (Colo.1993). Plaintiffs correctly point out that railroads serve a public purpose. *See Buck v. District Court*, 199 Colo. 344, 608 P.2d 350 (1980). But railroads retain private property rights in their rights-of-way. *See Kansas Pac. Ry. Co. v. Ward*, 4 Colo. 30, 33 (1877) ("railway company has the undoubted right to the exclusive use of its roadway, except at public crossings, for the unimpeded passage of its trains").[2]

Moreover, to "encourage natural and well-ordered development of municipalities of the state," the Act is to be liberally construed. § 31–12–102(1)(a). Because the "public rights-of-way" exception limits municipal power to unilaterally annex unincorporated areas within their boundaries, we must construe the exception narrowly. *Brodak v. Visconti*, 165 P.3d 896, 898 (Colo.App.2007).

Nevertheless, plaintiffs argue that "public rights-of-way" should be interpreted to include railroad rights-of-way because the hearings on House Bill 1533 show that the General Assembly was concerned over municipalities abusing their annexation power by annexing public streets or narrow strips along state highways to establish enclave boundaries. According to plaintiffs, the same vice arises when municipalities seeking to unilaterally annex an enclave establish the requisite boundaries by annexing railroad

---

**2.** *See also Chicago & North Western Transp. Co. v. Webster County Bd. of Supervisors*, 880 F.Supp. 1290, 1307 n. 11 (N.D.Iowa 1995) ("The sidewalk is a public right-of-way. The railroad's right-of-way is a private one."), *aff'd*, 71 F.3d 265 (8th Cir.1995); *cf. Brady v. Consolidated Rail Corp.*, 35 Ohio St.3d 161, 519 N.E.2d 387 (1988) (railroad company owed duty of care to person injured at the point where the railroad right of way intersected with the public right of way).

rights-of-ways. *See Moffett v. Life Care Centers,* 219 P.3d 1068, 1072 (Colo.2009) ("If the plain language is ambiguous, we may look to other factors, such as the goal of the statutory design, in determining legislative intent."). But this argument fails because it assumes, without record support, that the City had no purpose in annexing the railroad rights-of-way beyond a ploy to create enclaves.

Additionally, even if a concern over annexing railroad rights-of-way merely to create a basis for unilaterally annexing enclaves could be inferred from the legislative history, that inference would be only indirect evidence of legislative intent. In contrast, direct evidence of legislative intent appears where other provisions use "transportation right-of-way," but section 31–12–106(1.1) does not. Although no Colorado statutory interpretation case establishes a priority among the various principles, we consider direct indicia of legislative intent more reliable than indirect indicia.

Accordingly, we conclude that the unilateral annexations of the Southern and Northern Enclaves are not void based on the public rights-of-way exception in section 31–12–106(1.1), and to that extent we affirm the district court's judgment.

### V. Southern Enclave Boarder

■ The Burch plaintiffs next contend the Southern Enclave annexation should be declared void because the annexation map for AN–57–85, which formed its eastern boundary, does not show compliance with the one-sixth contiguity requirement. We conclude a remand for further findings is necessary.

The Burch plaintiffs moved for reconsideration after the City approved the annexations, arguing in part that AN–57–85 did not comply with the one-sixth contiguity requirement because the contiguous boundaries shown on the certified annexation map totaled 8,999.88 feet. The City held a special meeting to address the motion. It did not hear additional testimony, but received exhibits, including an affidavit from a city engi-

neer that stated: "all of the annexations that create[d] the enclaves ... [satisfied] the statutory requirements for a legal annexation." The affidavit did not explain how the engineer reached this conclusion. The City found:

> [W]ith regard to all annexation ordinances that create the enclaves in cases AN–219–07 and AN–220–07, *including specifically Ordinance 57–85,* the statutory requirements for legal annexation including a requirement for a one-sixth contiguity of annexed areas with existing Commerce City boundaries at the time of annexation were valid.

(Emphasis added.)

■ When facts are presented through uncontested documentary evidence, "an appellate court may draw its own conclusions." *M.D.C./Wood, Inc. v. Mortimer,* 866 P.2d 1380, 1382 (Colo.1994); *see also Archangel Diamond Corp. v. Lukoil,* 123 P.3d 1187, 1195 (Colo.2005) ("We review the documentary evidence de novo.").

Based on our review of the annexation map certified in conjunction with AN–57–85, we conclude that a remand is necessary for the district court to direct the City to make further factual findings whether AN–57–85 meets the one-sixth contiguity requirement.

This map provides that the total "perimeter distance of the area to be annexed is 54,226.83 feet" and that "the perimeter distance of the area to be annexed which is contiguous to [the City] is 9,087.98 feet." It includes a surveyor's certification which states: "more than one-sixth of the peripheral boundary of said tract is contiguous to the present boundary of [the City]."

The contiguous boundary is depicted on the map with hatch marks. Similar to the summary presented by the Burch plaintiffs to the City, our calculations using the map's measurements along the marked contiguous boundary total 8,999.88 feet, which is short of the one-sixth contiguity requirement. However, we have identified a small boundary on the annexation map that was contiguous to

the City at the time AN–57–85 was annexed, but for which no measurement is provided, which may account for the shortfall. *See* Appendix.[3] Hence, we cannot determine from the map if this boundary accounts for the discrepancy between the 9087.99 feet distance printed on the map and our calculation of 8,999.88 feet.

To support its findings, the City points to general testimony about the Southern Enclave's compliance with the Act and the civil engineer's affidavit. However, this testimony does not directly address the one-sixth contiguity of AN–57–85. And the affidavit is conclusory without explanation or reference to supporting facts. *See generally Raygor v. Board of County Comm'rs,* 21 P.3d 432, 437 (Colo.App.2000) (affidavits are not sufficient if supported only by conclusory statements).

On remand, the length of the unmeasured common border between AN–57–85 and AN–50–83 may be determinable by extrapolating from the measurements on the certified map. Therefore, the City may accept additional affidavits as necessary to make its findings, which, in its discretion, may be limited to the maps and surveys already in the record.

Accordingly, we conclude that the order must be vacated as to the contiguity requirement and the case remanded to the district court with directions to remand to the City for further findings whether AN–57–85 satisfied the one-sixth contiguity requirement. *Cf. Bd. of County Comm'rs v. Conder,* 927 P.2d 1339, 1350 (Colo.1996) (where a board fails to make adequate findings in the record, it is appropriate for the trial court to remand the case to the board with directions to make findings of fact necessary for the subsequent review of its action).

If the City determines that the contiguity requirement was not satisfied, the annexation of the Southern Enclave shall be set aside. If the City determines that the contiguity re-

quirement was satisfied, the Southern Enclave annexation shall stand affirmed. Either party may appeal the City's remand determination to the district court, and thereafter to this court.

## VI. Attorney Fees

 On cross-appeal, the City contends the trial court abused its discretion by declining to award its attorney fees and costs. We disagree.

 The City requested attorney fees and costs under section 31–12–116(2)(a)(IV), which provides:

> In the event that the person bringing an action pursuant to this section fails to substantially prevail, the court may award the municipality its reasonable attorney fees and costs of defense.

A statute using "may" generally connotes permissive rather than mandatory action. *See Larry H. Miller Corporation–Denver v. Urban Drainage & Flood Control District,* 64 P.3d 941, 946 (Colo.App.2003).

Because no case has interpreted section 31–12–116(2)(a)(IV), we look to cases involving other statutory fee claims, which articulate the general rule that whether to award attorney fees is within the discretion of the trial court and will be disturbed only if the ruling is manifestly arbitrary, unreasonable, or unfair. *See, e.g., Munoz v. Measner,* 214 P.3d 510, 512 (Colo.App.2009) (*cert. granted* Aug. 17, 2009) (§ 13–17–102, C.R.S.2009); *Town of Telluride v. San Miguel Valley Corp.,* 197 P.3d 261 (Colo.App.2008) (§ 43–4–506(1)(h)(II)(B), C.R.S.2009).

The City argues that refusal to award fees was an abuse of discretion because plaintiffs' claims were "without merit as a matter of law or fact." To the contrary, "public right-of-way" is undefined in the Act. *See McCor-*

---

**3.** This boundary is located just west of the "northeast corner of said SW 1/4; thence N 89 degrees 54 minutes 00 seconds W along the north line of said SW 1/4." From that corner, the description of the annexation area continues "a distance of 401.12 feet to a point on the westerly right of way line of the Burlington Northern Railroad." However, no separate measurement is given for the small portion of the 401.12 foot measurement that is bordered by AN–50–83, which had been previously annexed by the City.

*mick v. Bradley,* 870 P.2d 599, 607–08 (Colo. App.1993) ("A losing position does not necessarily justify an award of attorney fees ... if, as here, a plaintiff makes a good faith presentation of an arguably meritorious legal theory upon which no determinative authority in Colorado exists."). The City points to no other basis in the record for its position. Further, the Burch plaintiffs' position on the one-sixth contiguity requirement may be correct.

Based on this conclusion, we also decline to award the City attorney fees and costs on appeal under C.A.R. 39.5.

The judgment is vacated as to the contiguity requirement, with respect to which the case is remanded for further proceedings consistent with this opinion, and in all other aspects it is affirmed.

Judge ROMÁN and Judge BERNARD concur.

*Appendix: Excerpt from the Annexation Map for AN 57–85*GENERATED DIVIDER LINE OF TYPE 10

