Opinion by JUDGE FOX
¶ 1 This dispute involves the extent to which a railroad can authorize a third party's incidental use of its continuously used railroad right-of-way as a non-exclusive easement for a public recreation trail.
¶ 2 Defendants Timothy Wolf and Katherine Turner (collectively Wolf) appeal the trial court's summary judgment in favor of plaintiff, Durango & Silverton Narrow Gauge Railroad (DSNGRR), allowing DSNGRR to grant to the City of Durango (Durango) a non-exclusive easement over part of its right-of-way and adjacent to the railroad tracks to extend a public recreation trail. Wolf also appeals the trial court's failure to join five other property owners whose properties are subject to DSNGRR's right-of-way and are affected by the trail easement, and the trial court's failure to grant attorney fees to Wolf. We affirm.
I. Background
¶ 3 In 1881, DSNGRR's predecessor in interest (the Denver and Rio Grande Railway Company) acquired a right-of-way from Wolf's predecessor in interest (Dooley). The pertinent part of the Dooley deed states:
[Dooley] does hereby sell, grant, convey, and release unto the said Denver and Rio Grande Railway Company the right of way for a width of one hundred feet-fifty feet on each side of center line-for the construction of the said Railway.... Giving and granting unto [the Denver and Rio Grande Railway] the right to excavate, fill, ditch, drain, erect cattle guards and crossings [etc.].[1]
¶ 4 In 2009, DSNGRR agreed to grant the city of Durango a non-exclusive easement to extend a public recreation trail over its right-of-way and adjacent to the railroad tracks, part of which would run through Wolf's property.[2] The record discloses that DSNGRR will benefit from the agreement with Durango in two ways. First, Durango will pay DSNGRR $1 million, which the railroad will use for continued operations and maintenance. Second, the trail will promote safe use of the right-of-way by pedestrians and bicyclists, who currently walk and ride directly on the railroad tracks, tracks that remain in use.
¶ 5 Wolf opposed the 2009 agreement, arguing that the 1881 right-of-way permits DSNGRR to use the land only for "railroad purposes," and that a recreation trail is not a railroad purpose. DSNGRR sought a declaratory judgment as to the parties' respective rights.
¶ 6 Examining cross-motions for summary judgment, the trial court held that the Dooley deed conveyed an easement to DSNGRR's predecessor that was more expansive than a typical easement, and that the easement gives DSNGRR exclusive use and control of its right-of-way as long as it continues to operate a railroad. The court further held that the use of part of the right-of-way for a public recreation trail constitutes a railroad purpose because it eliminates the current safety and liability problem of people *795 walking on the tracks, and increases the efficiency of any needed rail repairs.
¶ 7 This appeal followed.
II. Third-Party Lease of Railroad Right-of-Way
¶ 8 Wolf contends that the trial court erred when it held that DSNGRR's easement authorized DSNGRR to lease part of its right-of-way to Durango for a public recreation trail. We disagree and conclude that a public recreation trail is incidental to and not inconsistent with DSNGRR's continued, exclusive use and control of its right-of-way.
A. Standard of Review
¶ 9 Summary judgment is appropriate when the pleadings and supporting documents demonstrate that there is no genuine issue of material fact and that one party is entitled to judgment as a matter of law. West Elk Ranch, L.L.C. v. United States , 65 P.3d 479, 481 (Colo.2002) ; Silver v. Colorado Cas. Ins. Co. , 219 P.3d 324, 326-27 (Colo.App.2009). We review a grant of summary judgment de novo. West Elk Ranch, L.L.C. , 65 P.3d at 481 ; Silver , 219 P.3d at 327.
B. Railroad Easement
¶ 10 The trial court first held that DSNGRR's right-of-way was more expansive than a typical easement and that DSNGRR had the right to exclusive use and control of the right-of-way. We agree.
¶ 11 The parties agree that the railroad's right-of-way is an easement-rather than a fee interest-because the Dooley deed specifically conveys a "right-of-way for a width of one hundred feet-fifty feet on each side of center line-for the construction of the said Railway through the following described lands...." See Board of Cnty. Comm'rs v. Morris, 147 Colo. 1, 7, 362 P.2d 202, 205 (1961) ; Lincoln Sav. & Loan Ass'n v. State, 768 P.2d 733, 735 (Colo.App.1988) ("[D]eeds which in the granting clause convey a right-of-way over, across, or upon certain lands devolve a right only, and are generally construed as creating an easement."). The issue here is the scope of the railroad's continuously used easement.
¶ 12 Under Colorado and federal precedent, railroad rights-of-way are more expansive than ordinary easements because they convey an exclusive right for the railroad to use the right-of-way and to exclude others, including the owner of the servient estate. Midland Valley R.R. Co. v. Sutter, 28 F.2d 163, 168 (8th Cir.1928) ("[T]he owner of the fee may not use any portion of the right of way either in the immediate use of the railroad company or necessary to the safe and convenient use of that which is in actual service."); Denver & Salt Lake Ry. Co. v. Pacific Lumber Co., 86 Colo. 86, 88-89, 278 P. 1022, 1023 (1929) ("[S]o long as the defendant railway company maintains its line of road[,] it has the right of exclusive use and possession of its right of way .... [and the railway company] could not adequately and fully perform its duty as a common carrier unless its exclusive use of its right of way is retained."); Kansas Pac. Ry. Co. v. Ward, 4 Colo. 30, 33 (1877) ("[The] railway company has the undoubted right to the exclusive use of its roadway, except at public crossings, for the unimpeded passage of its trains."); Sinclair Mktg. Inc. v. City of Commerce City, 226 P.3d 1239, 1244 (Colo. App.2009) ("A railroad's right of way has, therefore, the substantiality of the fee, and it is private property, even to the public, in all else but an interest and benefit in its uses." (quoting West Union Tel. Co. v. Pa. R.R. Co., 195 U.S. 540, 570, 25 S.Ct. 133, 49 L.Ed. 312 (1904) )).
¶ 13 Wolf first argues that modern courts have rejected this expansive construction of railroad easements. The cases Wolf cites are distinguishable, however, because they limit railroads' rights to the subsurface of the right-of-way. See Kansas City S. Ry. Co. v. Arkansas La. Gas Co., 476 F.2d 829, 834-35 (10th Cir.1973) (holding that a railroad cannot prevent servient owner from leasing subsurface rights); Tennessee Gas Pipeline Co. v. Mississippi Cent. R.R. Co., 164 F.Supp.2d 823, 826-27 (N.D.Miss.2001) (holding that a servient estate may lease subsurface rights if such use does not interfere with the railroad's right to the surface of the right-of-way); Energy Transp. Sys., Inc. v. Kansas City S. Ry. Co., 638 P.2d 459, 464 (Okla.1981)
*796 (same). In contrast, the only use at issue here is a surface use.
¶ 14 We reject Wolf's further assertion that the source of a railroad's right-of-way grant is determinative in resolving the scope of those rights. Neither federal nor private grants necessarily convey more rights. See, e.g., Denver & Salt Lake Ry. Co., 86 Colo. at 89-90, 278 P. at 1023-24 (construing a federal grant); Midland Valley R.R. Co., 28 F.2d at 168 (construing a private grant).[3]
¶ 15 We conclude that DSNGRR's right-of-way across Wolf's property is a traditional, expansive railroad easement, which includes the right to exclusive use and control of the surface of the right-of-way.
C. Incidental Use
¶ 16 DSNGRR's expansive easement gives it the right to lease part of its right-of-way to Durango for a public recreation trail. We need not decide whether a recreation trail fulfills a "railroad purpose," because it satisfies the incidental use doctrine.
¶ 17 We affirm on grounds different from those the trial court relied upon. Roque v. Allstate Ins. Co., 2012 COA 10, ¶ 7 ("We can affirm for any reason supported by the record, even reasons not decided by the trial court."). We apply the incidental use doctrine for the first time in Colorado. That doctrine states that a railroad may lease a portion of is right-of-way where the use is incidental to or not inconsistent with the railroad's continued use of its right-of-way for railroad purposes. See Grand Trunk R.R. Co. v. Richardson, 91 U.S. 454, 469, 23 L.Ed. 356 (1875) ( "[I]f the [railroad] company might have put up the buildings, why might it not license others to do the same thing for the same object; namely, the increase of its facilities for the receipt and delivery of freight? The public is not injured, and it has no right to complain, so long as a free and safe passage is left for the carriage of freight and passengers."); International Paper Co. v. MCI Worldcom Network Servs., Inc., 202 F.Supp.2d 895, 902-03 (W.D.Ark.2002) ("[S]o long as the railroad is occupying any portion of the right-of-way, the railroad is entitled to grant licenses or easements to third parties provided the additional use may reasonably be considered to be of benefit to the railroad, [and] while the railroad is occupying any portion of its right-of-way, the underlying owner is not entitled to compensation for obstructions the railroad places or permits to be placed upon its right-of-way."); Mellon v. Southern Pac. Transp. Co., 750 F.Supp. 226, 230 (W.D.Tex.1990) ("The test for determining right-of-way uses is whether the subject use is inconsistent with the purposes for which the right of way was granted.") (citing United States v. Union Pac. R.R., 353 U.S. 112, 77 S.Ct. 685, 1 L.Ed.2d 693 (1957) ); Mitchell v. Illinois Cent. R.R. Co., 384 Ill. 258, 51 N.E.2d 271, 274 (Ill.1943) ("[The railroad] has the right to do all things with its right of way, within the scope of its charter powers, which may be essential or incidental to its full and complete use to accomplish the purpose for which the easement was acquired."); McSweyn v. Inter-Urban Ry. Co., 256 Iowa 1140, 130 N.W.2d 445, 448-49 (Iowa 1964) ("A railroad may make any use of land acquired for railroad purposes which directly or indirectly contributes to the safe, economical and efficient operation of its road ... [and] may make any use of its land [that] is incidental to railroad purposes or, as frequently expressed, is not a misuse of it. And whatever the railroad may do itself it may license another to do."); Johnson v. Union Pac. R.R. Co., 133 Neb. 243, 274 N.W. 581, 584 (Neb.1937) ("[A] railroad right of way adjacent to tracks, when not a part of railroad transportation facilities devoted or necessary to public use, is private property of the carrier and [ ]the latter may lease it for private purposes to one or more persons and deny a like privilege to others."); Washington Sec. & Inv. Corp. v. Horse Heaven Heights, Inc., 132 Wash.App. 188, 130 P.3d 880, 886 (Wash.App.2006) ("[T]he incidental use doctrine permits a railroad to use its easement to conduct not only railroad activities, 'but also any other incidental activities that are not inconsistent and do not *797 interfere with the operation of the railroad.' " (quoting Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n, 156 Wash.2d 253, 126 P.3d 16, 27 (Wash.2006) (internal quotations omitted))); Marthens v. B & O R.R. Co., 170 W.Va. 33, 289 S.E.2d 706, 711 (W.Va.1982) ("[A] railroad company may permit third persons to use or lease a portion of its right-of-way for non-railroad purposes where such use is not inconsistent and does not interfere with the use of the right-of-way for railroad purposes.").
¶ 18 Wolf cites no cases, and we have found none, that decline to apply the incidental use doctrine to determine a railroad's authority to use or lease part of its right-of-way. While the doctrine has traditionally been used to allow railroads to lease their rights-of-way for commercial activities and to build structures,[4] no logical reason exists to limit a railroad from leasing part of its right-of-way for a public purpose, such as a recreation trail. Application of the incidental use doctrine here, where Durango's intended use of DSNGRR's right-of-way is to extend a recreation trail benefiting the public, is rational.
¶ 19 Wolf does not dispute the fact that DSNGRR has previously entered into licenses, leases, and easements with government entities, businesses, and private individuals (including Wolf) involving portions of the railroad right-of-way.
¶ 20 Here, a public recreation trail is incidental to DSNGRR's use of its right-of-way. See Sinclair, 226 P.3d at 1244 (citing Donovan v. Pennsylvania Co., 199 U.S. 279, 294, 26 S.Ct. 91, 50 L.Ed. 192 (1905) ("[A]s incident to ownership, it may use the property for the purposes of making profit for itself.")). First, the agreement with Durango specifies that the trail easement is subject, and subordinate, to DSNGRR's continued right to use and operate the railroad, and that DSNGRR retains the right to operate, maintain, and modify the railroad tracks as it sees fit. The record also establishes-and the parties do not dispute-that Durango agreed to pay DSNGRR $1 million for the lease. The unrebutted affidavit of DSNGRR's general manager states that DSNGRR plans to use the revenue to support continued operations and maintenance of the railroad.
¶ 21 While railroads are not considered "public rights-of-way" in Colorado, contrary to DSNGRR's contention, railroads do serve a public purpose. Sinclair, 226 P.3d at 1244 (stating that while railroads serve a public purpose, they retain private property rights in their rights-of-way); see also Colo. Const. art. XV, § 4 ("All railroads shall be public highways...."); Marthens, 289 S.E.2d at 711 ("Essentially, a railroad is a highway dedicated to the public use."). Accordingly, a public recreation trail running along the railroad track is not inconsistent with DSNGRR's use of its right-of-way. The record reflects that DSNGRR exists principally to take tourists between Durango and Silverton on a historic steam train. Pedestrians and bicyclists already use the railroad track, and a public recreation trail will increase their safety. That this railroad track has been used for tourism, allowing people to enjoy the vistas along the route, renders the proposed public recreation trail consistent with the railroad's use of its easement.
¶ 22 To the extent that Wolf argues that the use of the right-of-way as a public recreation trail will burden him, any such determination is unnecessary. Under the incidental use doctrine, the focus of our inquiry is the burden on the railroad, not the burden on Wolf. See Mellon, 750 F.Supp. at 230 (citing Union Pacific R.R., 353 U.S. 112, 77 S.Ct. 685 ); Mitchell, 51 N.E.2d at 274.
¶ 23 We thus conclude that DSNGRR's lease of part of its right-of-way to Durango for a public recreation trail, especially where the lease proceeds will be used to improve the operations and safety of the railroad, is incidental to and not inconsistent with DSNGRR's continued exclusive use and control of its right-of-way.
*798 III. Joinder of Indispensable Parties
¶ 24 Wolf next contends that the trial court erred by failing to require the joinder, under C.R.C.P. 19, of five indispensable parties whose property is also subject to DSNGRR's right-of-way and affected by the public recreation trail. We disagree.
¶ 25 This dispute involves the interpretation of the Dooley deed, which conveyed a right-of-way to DSNGRR's predecessor only across Wolf's property. The trial court did not interpret any deeds conveying any portion of the other five properties, and the summary judgment resolved the dispute between DSNGRR and Wolf without injury or prejudice to other property owners.
¶ 26 Under C.R.C.P. 19, the trial court was not required to join other parties who were strangers to the right-of-way at issue, especially where Wolf did not move for joinder, but simply raised the issue in his summary judgment motion. See Seago v. Fellet, 676 P.2d 1224, 1227 (Colo.App.1983) (in breach of contract action by homeowners against subdivision developer, homeowners whose rights were not affected by the outcome of the lawsuit were not indispensable parties).[5]
IV. Attorney Fees
¶ 27 Wolf next contends that the trial court erred in declining to grant him attorney fees. See § 13-17-102(4), C.R.S.2012 (attorney fees are appropriate when the action lacked substantial justification). Wolf did not prevail at the trial court or on appeal, and DSNGRR's claims were not frivolous. See Pat's Constr. Serv., Inc. v. Insurance Co. of the W., 141 P.3d 885, 889 (Colo.App.2005) ("[A] claim lacks substantial justification if it is substantially frivolous or groundless."). Thus, Wolf is not entitled to attorney fees.
¶ 28 The judgment is affirmed.
JUDGE TAUBMAN and JUDGE ROMÁN concur.

The Parties disagree about whether a hand-written symbol for et cetera should be interpreted as an open-ended right for the railroad to use its right-of-way in any way the railroad sees fit. However, our analysis does not require us to decide the breadth of the et cetera language.

The trail only affects property subject to the railroad right-of-way.

Although the reason is unclear, some courts have neglected to address the source of the grant. See, e.g., Kansas Pac. Ry. Co., 4 Colo. at 33 ; Sinclair Mktg. Inc., 226 P.3d at 1244.

See, e.g., Grand Trunk R.R. Co., 91 U.S. at 468-69 (lease to timber company to erect buildings on right-of-way); Mellon, 750 F.Supp. at 231 (lease to telephone company to bury fiber-optic cable along right-of-way); International Paper Co., 202 F.Supp.2d at 902-03 (same); Mitchell, 51 N.E.2d at 275 (lease to gas station); McSweyn, 130 N.W.2d at 449 (lease to store fuel tanks); Johnson, 274 N.W. at 584 (lease to lumber yard).

While Wolf noted the existence of additional property owners in his motion for summary judgment, Wolf did not move to join any additional parties nor move to dismiss for failure to join an indispensable party.